UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                                         Chapter 7
                                                               Case No. 1-24-41081-ess

        SUNNY JOSEPH BARKATS,
        *aka* SANNY BARKATS,

                Debtor.
------------------------------------------------------------x

KELLY ANN LEWIS, LEWIS FAMILY
GROUP FUND LP, and LF FUND GP LLC,
                                                               Adv. Pro. No. 1-25-01027-ess
                Plaintiffs,

     -against-

SUNNY JOSEPH BARKATS,
*aka* SANNY BARKATS,
*aka* SUNNY J. BARKATS
*aka* JOSEPH BARKATS,
*aka* JOSEPH S. BARKATS,
*aka* JS BARKATS,

                Defendant.
------------------------------------------------------------x

## MEMORANDUM DECISION ON THE MOTION
## TO DISMISS THE COMPLAINT

*Appearances:*

| | |
|---|---|
| Chester R. Ostrowski, Esq. | Sergei Orel, Esq. |
| McLaughlin & Stern, LLP | 2125 Center Avenue |
| 260 Madison Avenue | Suite 616 |
| New York, NY 10016 | Fort Lee, NJ 07024 |
| *Attorneys for Plaintiffs Kelly Ann Lewis, Lewis Family Group Fund LP, and LF Fund GP LLC* | *Attorneys for Defendant Sunny Joseph Barkats* |

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

### Introduction

Plaintiffs Kelly Ann Lewis, Lewis Family Group Fund LP, and LF Fund GP LLC (the "Plaintiffs") commenced this adversary proceeding (the "Adversary Proceeding") against the Defendant Sunny Joseph Barkats, in connection with a judgment (the "Judgment") that they obtained against Mr. Barkats, jointly and severally with his law firm JS Barkats PLLC (the "Barkats Firm") and his real estate company Sunny Sky Realty, LLC ("Sunny Sky Realty"), in an action in the United States District Court for the Southern District of New York, *Lewis Family Group Fund v. JS Barkats PLLC*, Case No. 16-cv-05255 (the "District Court Action").  That judgment found Mr. Barkats, the Barkats Firm, and Sunny Sky Realty (the "District Court Defendants") liable for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO").  Complaint (the "Complaint" or "Compl."), ECF No. 1, ¶¶ 1-4.

In this action, the Plaintiffs seek a determination that the Judgment in the District Court Action was the result of Mr. Barkats's fraudulent conduct, and therefore, should be excluded from his bankruptcy discharge under Bankruptcy Code Sections 523(a)(2)(A) and 523(a)(6) or, in the alternative, a denial of Mr. Barkats's discharge under Bankruptcy Code Sections 727(a)(4) and 727(a)(5).  Compl. ¶¶ 2, 10, 12, 30, 52-73.

Now before the Court is Mr. Barkats's motion to dismiss the Complaint (the "Motion to Dismiss" or "Mot. to Dismiss") pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to adversary proceedings by Bankruptcy Rule 7012(b).

**Jurisdiction**

This Court has jurisdiction over this adversary proceeding pursuant to Judiciary Code Sections 157(b)(2)(A), (I) and (J), and 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York. This is a core proceeding pursuant to Judiciary Code Section 157(b), and venue is proper before this Court pursuant to Judiciary Code Section 1409.

**Background**

*The District Court Action*

On July 1, 2016, the Plaintiffs commenced the District Court Action against the District Court Defendants and J.P. Morgan Chase Bank in the United States District Court for the Southern District of New York. Compl. ¶ 23; District Court Action, ECF No. 1. In that action, the Plaintiffs asserted claims against Mr. Barkats, the Barkats Firm, Sunny Sky Realty, and J.P. Morgan Chase Bank, N.A. for, in substance, RICO violations, breach of contract, breach of a fiduciary duty, conversion, constructive trust, fraudulent inducement, theft of business opportunities, accounting, injunctive relief, negligence, and intentional and negligent infliction of emotional distress.

On July 21, 2020, the District Court entered an Order of default judgment in the District Court Action and referred the matter to Magistrate Judge James Cott for an inquest to determine the extent of the damages suffered by the Plaintiffs. District Court Action, ECF No. 267.

On March 31, 2021, Judge Cott entered a report and recommendation as to the damages suffered by the Plaintiffs, and fixing damages in the amount of $405,000 in RICO treble damages, plus prejudgment interest, and $164,541.65 in compensatory damages for negligent infliction of emotional distress. Compl. ¶¶ 29-30; District Court Action, ECF No. 285 (the

2

"Report and Recommendation").

Some six months later, on September 23, 2021, the District Court entered a memorandum opinion and Order adopting Judge Cott's Report and Recommendation in full, granting default judgment in the Plaintiffs' favor, and awarding the Plaintiffs damages in the amount of $405,000 in RICO treble damages, plus prejudgment interest, and $164,541.65 in compensatory damages for negligent infliction of emotional distress (the "District Court Judgment").  Compl. ¶¶ 31-33; District Court Action, ECF No. 291.

And on September 24, 2021, the District Court entered a default judgment in favor of the Plaintiffs and closed the case.  District Court Action, ECF No. 293.

*Mr. Barkats's Chapter 7 Bankruptcy Case*

On March 11, 2024, Mr. Barkats filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  *In re Sunny Joseph Barkats aka Sanny Barkats*, Case No. 24-41081, ECF No. 1 ("*In re Barkats*" or the "Bankruptcy Case").  Mr. Barkats's Bankruptcy Case remains open, and the only filings of substance have been a series of motions and stipulations filed by the Plaintiffs and the Chapter 7 Trustee to extend their time to object to Mr. Barkats's discharge. *See In re Barkats*, ECF Nos. 24, 26, 40, 41, 44, 49, 51, 53.  Those motions and stipulations have been granted and approved by the Court.  *See In re Barkats*, ECF Nos. 27, 30, 46, 47, 50, 52, 58.

On June 30, 2025, the Chapter 7 Trustee filed a report of no distribution in the Bankruptcy Case, noting that "there is no property available for distribution from the estate over and above that exempted by the law."  *In re Barkats*, ECF entry dated June 30, 2025, Chapter 7 Trustee Report of No Distribution Minute Entry.

*This Adversary Proceeding*

On March 19, 2025, the Plaintiffs commenced this adversary proceeding by filing the

Complaint against Mr. Barkats.  Compl., ECF No. 1.  The Plaintiffs assert two claims under

Bankruptcy Code Section 523, and two claims under Bankruptcy Code Section 727.  Compl.

¶¶ 10, 12.

The Plaintiffs ask this Court to declare that the debts that Mr. Barkats owes to them

stemming from the District Court Judgment are nondischargeable under Bankruptcy Code

Section 523(a)(2)(A), on grounds that they are debts "owed by an individual debtor for money or

property that was obtained by [Mr. Barkats] by and through false pretenses, false representations,

and/or actual fraud, other than a statement respecting [Mr. Barkats]'s financial condition or the

financial condition of an insider."  Compl. ¶ 54.  They also assert that the debts that Mr. Barkats

owes to them stemming from the District Court Judgment are nondischargeable under Section

523(a)(6), on grounds that they are debts "owed by an individual debtor that w[ere] obtained by

[Mr. Barkats] as a result of willful and malicious injury to Plaintiffs and/or Plaintiffs' property,

which [Mr. Barkats] caused."  Compl. ¶ 58.

And they ask that the Court find that Mr. Barkats is not entitled to a discharge under

Bankruptcy Code Section 727(a)(4), because he "knowingly and fraudulently made numerous

false oaths or accounts," and "knowingly and fraudulently withheld from an officer of the estate

entitled to possession under this title (namely, the Chapter 7 Trustee), certain recorded

information, including books, documents, records, and papers, relating to the Debtor's property

or financial affairs."  Compl. ¶¶ 67-68.  They also assert that his discharge should be denied

under Section 727(a)(5), because Mr. Barkats has "failed to explain satisfactorily – and will be

unable to explain satisfactorily before determination of denial of discharge – the loss of assets or

deficiency of assets to meet his liabilities."  Compl. ¶ 72.

In considering a motion to dismiss, the Court should "'accept[] all factual allegations as

true, and draw . . . all reasonable inferences in the plaintiff's favor.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (alteration in original) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)).  In considering a complaint, the Court "may [also] consider documents attached to it" as part of the complaint.  *Tannerite Sports, LLC v. NBCUniversal New Group*, 864 F.3d 236, 247 (2d Cir. 2017).  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (holding that a "complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference" (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

The following factual matters are alleged in the Complaint and the documents attached to it, including the complaint in the District Court Action, and they are taken as true for purposes of this Motion to Dismiss.  *See Tannerite Sports*, 864 F.3d at 247; *DiFolco*, 622 F.3d at 110-11.

<u>The Creation of the Lewis Family Group Fund Limited Partnership and General Partnership</u>

The Plaintiffs state that in November 2014, Kelly Ann Lewis entered into a business relationship with Mr. Barkats and the Barkats Firm, when Ms. Lewis was introduced to Mr. Barkats and the Barkats Firm by her brother, Ryan Lewis.  Compl. ¶ 30; Compl., Exh. A (District Court Action Second Amended Complaint (the "Second Amended Complaint")), ¶ 29.

They also allege that in December 2014, Ms. Lewis and Mr. Lewis attended a meeting with Mr. Barkats and the Barkats Firm, to discuss the retention of the firm in connection with the establishment of a family investment fund.  Compl. ¶ 30; Compl., Exh. A, ¶ 30.  After the meeting, Mr. Barkats circulated a draft retention agreement (the "First Draft Retainer") to Ms. Lewis and Mr. Lewis, which proposed that the Barkats Firm would represent the Lewises and that he would receive a ten percent interest in profits of the fund.  Compl. Exh. A, ¶¶ 31, 37.

5

The First Draft Retainer stated that it was agreed to and accepted by the Lewises, and that they had had separate legal representation in reaching the agreement with the Barkats Firm, though neither of these statements was true.  Compl. Exh. A, ¶¶ 39-40.

The Plaintiffs allege that the Lewises did not immediately sign the First Draft Retainer, and instead, reached out to the Barkats Firm to discuss its terms.  Compl. Exh. A, ¶ 41.  On January 6, 2015, after some communications by email and phone regarding the First Draft Retainer, when Ms. Lewis indicated that she needed to find her copy of the First Draft Retainer, Mr. Barkats proposed to send and did send Ms. Lewis a new version of the retention agreement (the "Second Draft Retainer"), which he described as being "substantially identical to the [First Draft Retainer] except for a date change, several minor grammatical changes and the removal of an unnecessary bold letter caption."  Compl. Exh. A, ¶¶ 42-44.

Instead, the Plaintiffs assert, the Second Draft Retainer contained substantial changes to the language of the First Draft Retainer, which eliminated language establishing the nature of the relationship of the Barkats Firm to the Lewises, and changed the destination of the money to be deposited for the fund from the Barkats Firm's escrow account to a commercial bank account. Compl. Exh. A, ¶¶ 44, 46-50.

The Plaintiffs allege that on January 7, 2015, in reliance on Mr. Barkats's representation that the Second Draft Retainer was substantially the same as the First Draft Retainer, Ms. Lewis signed the Second Draft Retainer.  Compl. Exh. A, ¶ 45.

The Plaintiffs state that on January 16, 2015, the Barkats Firm established the Lewis Family Investments Fund LP (the "Lewis LP") and LF Fund GP, LLC (the "Lewis GP", together with the Lewis LP, the "Lewis Fund").  Compl. Exh. A, ¶ 51.

The Plaintiffs assert that, on January 26, 2015, under the guise of exigently needing

6

signatures for documents which were formalities necessary to open a bank account for the Lewis Fund, and without explaining their contents, Mr. Barkats sent Ms. Lewis a limited partnership agreement for the Lewis LP and an operating agreement for the Lewis GP (together, the "Lewis Fund Agreements"). Compl. Exh. A, ¶¶ 54-57, 59. Ms. Lewis then executed the Lewis Fund Agreements. Compl. Exh. A, ¶ 58. Among other things, the language of the Lewis Fund Agreements granted to Mr. Barkats and the Barkats Firm substantial control over the Lewis Fund and the ability to prevent the dissolution of and distribution of capital from the Lewis Fund. Compl. Exh. A, ¶¶ 60-67.

According to the Plaintiffs, on February 3, 2015, Mr. Barkats opened a commercial checking account (the "Lewis Fund Account") for the Lewis Fund at J.P. Morgan Chase Bank, N.A. ("Chase"), and on February 9, 2015, the Lewises deposited $260,000 into the Lewis Fund Account. Compl. Exh. A, ¶¶ 68-69. Contrary to the Lewis Fund Agreements, Mr. Barkats did not open the Lewis Fund Account with Ms. Lewis as a signatory. Compl. Exh. A, ¶ 73.

The Plaintiffs aver that the actions that were taken by Mr. Barkats and the Barkats firm that led to the establishment of the business relationship with the Plaintiffs, formation of the Lewis Fund, creation of the Lewis Fund Agreements, and establishment of the Lewis Fund Account were willfully deceitful, fraudulent, and injurious. Compl. ¶¶ 30, 54, 58; Compl., Exh. A ¶¶ 39-40, 42-44, 46-50, 54-67, 73.

Fraudulent Activity During the Operation of the Lewis Fund

The Plaintiffs describe that between February 9, 2015, and October 21, 2015, Mr. Barkats withdrew $145,740 from the Lewis Fund Account as payments to the District Court Defendants in his name. Compl. Exh. A, ¶ 76, 78. This money was spent by Mr. Barkats for unauthorized purposes, including purchasing an investment property for his own benefit, purchasing stocks,

7

and paying for meals, parking, and taxis.  Compl. Exh. A, ¶ 78.

Mr. Barkats, the Plaintiffs allege, also disbursed to the Barkats Firm and Sunny Sky Realty (together, the "Barkats Entities") $46,540 of $48,000 in loan proceeds from a loan made by the Lewis Fund to InoLife Technologies Inc.  Compl. Exh. A, ¶¶ 79-81.  And they allege that the District Court Defendants were not entitled to these funds.  Compl. Exh. A, ¶ 82.  Mr. Barkats further sold the loan note on behalf of the Lewis Fund fraudulently to another investor, without the knowledge of the Lewises, exposing the Lewises to liability.  Compl. Exh. A, ¶¶ 86-87.

The Plaintiffs also assert that between April 2015 and November 2015, Mr. Barkats diverted multiple business opportunities away from the Lewis Fund to his business, Sunny Sky Realty.  Compl. Exh. A, ¶¶ 91-93.

The Plaintiffs aver that after the formation of the Lewis Fund, Mr. Barkats and the Barkats entities willfully and knowingly engaged in a pattern of deceitful, fraudulent, and injurious acts with respect to the Plaintiffs, in the context of their management of the Lewis Fund and interactions with Ms. Lewis.  Compl. ¶¶ 30, 54, 58; Compl., Exh. A. ¶¶ 76, 78-81, 86-87, 91-93, 95-103.

<u>The Termination of the Relationship Between the Lewises and Mr. Barkats</u>

The Plaintiffs allege that, from time to time after the creation of the Lewis Fund, Ms. Lewis asked for an accounting of the operations of the Fund.  Compl. Exh. A, ¶ 95.  Mr. Barkats did not provide her with these.  *Id*.  In early October 2015, Mr. Barkats contacted Ms. Lewis and suggested that she take back the principal invested in the Lewis Fund, and leave all profits for Barkats and the Barkats Firm.  *Id*.  Ms. Lewis did not agree to this proposal, and once more requested an accounting of the Lewis Fund's operations.  *Id*.

8

The Plaintiffs further allege that on October 15, 2015, Ms. Lewis provided Chase with the Lewis Fund Agreements and directed Chase to add her as an authorized signatory to the Lewis Fund Account, and Chase did so.  Compl. Exh. A, ¶¶ 104-05.  Ms. Lewis also requested and received bank statements from Chase for all activity in the Lewis Fund Account up to October 15, 2015.  Compl. Exh. A, ¶ 106.

According to the Plaintiffs, between October 16 and October 19, 2015, Mr. Barkats suggested in emails to and phone calls with Ms. Lewis that a full accounting was being done of the Lewis Fund's activities and holdings, and quoted several values of the entire Lewis Fund's holdings.  Compl. Exh. A, ¶¶ 96-99.  These ranged from less than the initial principal of $250,000 to as high as $350,000 plus stock.  *Id.*  Ultimately, Mr. Barkats did not provide Ms. Lewis with an accounting of the Lewis Fund.  Compl. Exh. A, ¶ 100.

On October 21, 2015, the Plaintiffs allege, Mr. Barkats again asked Ms. Lewis to take back the principal.  *Id.*  Later, Mr. Barkats once more requested that Ms. Lewis accept the principal, and that she sign a mutual release with Mr. Barkats and the Barkats Firm.  Compl. Exh. A, ¶ 102.  He also noted that the Lewis Fund owed the Barkats Firm substantial attorney's fees.  Compl. Exh. A, ¶ 101.  And in another email on the same day, Mr. Barkats denied that an accounting was due and stated that Ms. Lewis could either accept the principal back, or he would transfer the money into an escrow account, and that the Lewises could commence an action in court to determine what value was theirs.  Compl. Exh. A, ¶ 103.

The Plaintiffs assert that on October 21, 2015, Ms. Lewis attempted to withdraw and transfer $111,700, the balance of the funds remaining in the Lewis Fund Account to a separate private bank account.  Compl. Exh. A, ¶¶ 106-07.  On October 21, 2015, the Lewises verbally terminated their and the Lewis Fund's retention of the Barkats Firm, and the Lewis Fund

Agreements, and on October 27, 2015, the Lewises affirmed the terminations in writing.  Compl. Exh. A, ¶ 108.

And the Plaintiffs allege that on October 27, 2015, Mr. Barkats contacted Chase to attempt to prevent the transfer of the funds from the Lewis Fund Account.  Compl. Exh. A, ¶ 109.  On November 2, 2015, Chase issued a letter to Mr. Barkats and Ms. Lewis indicating that $111,700 had been frozen due to conflicting statements from Mr. Barkats and Ms. Lewis, and that Chase would hold the funds for a certain time for Mr. Barkats and Ms. Lewis to resolve the conflict, and otherwise file a complaint interpleading both.  Compl. Exh. A, ¶ 110.

The California Interpleader Action

On November 24, 2015, after an unsuccessful attempt to negotiate a resolution to the dispute, Chase filed an interpleader action in California Superior Court, captioned *JPMorgan Chase Bank, NA v. Lewis Family Investments Fund LP*, Case No.: BC602252 (the "California Interpleader Action").  Compl. Exh. A, ¶ 111.

After a trial held on April 17, 2017, the California Superior Court entered a "judgment favorable to the [Plaintiffs]."  Compl. Exh. A, ¶ 112.  The Plaintiffs aver that their legal fees and expenses required to resolve Mr. Barkats's effort to prevent the withdrawal of the $111,700 in the California Interpleader action have amounted to "not less than $65,000."[1]  *Id*.

The Lewis Fund's Final Request for an Accounting

The Plaintiffs allege that on May 11, 2016, the Lewis Fund made a final demand to Mr. Barkats and the Barkats Firm to provide a full accounting of the holdings of the Lewis Fund and turnover of all of its assets, by no later than May 20, 2016, and as of July 1, 2016, the day of the

---

[1]  The Second Amended Complaint elsewhere states that these legal fees are "cumulatively not less than $75,000."  Compl. Exh. A, ¶ 301.

filing of the complaint in the District Court Action, Mr. Barkats and the Barkats Firm had not responded to or met the demand.  Compl. Exh. A, ¶¶ 113-14.

And they assert that during and after their attempts to terminate the business relationship with Mr. Barkats and the Barkats Firm, Mr. Barkats and his firm continued willfully and knowingly to act in a deceitful, fraudulent, and injurious way with respect to them.  Compl. ¶¶ 28, 30, 54, 58; Compl., Exh. A. ¶¶ 109, 113-14.

The District Court Action

On July 1, 2016, the Plaintiffs commenced the District Court Action against the District Court Defendants, and Chase in the United States District Court for the Southern District of New York.  Compl. ¶ 23; District Court Action, ECF No. 1.  On July 29, 2016, the Plaintiffs filed a first amended complaint.  District Court Action, ECF No. 24.  On May 10, 2017, the Plaintiffs filed the Second Amended Complaint, Compl. ¶ 24; District Court Action, ECF No. 71, asserting claims against the District Court Defendants for RICO, RICO conspiracy, breach of contract, breach of fiduciary duty and legal malpractice, conversion, constructive trust, fraudulent inducement, theft of business opportunities, accounting, temporary and permanent relief declaratory judgment, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED").[2]  Compl. Exh. A, ¶¶ 195-273, 303-12.

---

[2]  The Second Amended Complaint also asserted claims as to Chase for negligence and NIED. Compl. Exh. A, ¶¶ 274-302, 313-16.  On January 18, 2018, the District Court entered an Order dismissing these claims against Chase and terminating Chase from the District Court Action. District Court Action, ECF No. 161.  On July 25, 2018, the District Court entered an Order denying the Plaintiffs' motion to reconsider the dismissal of the claims and termination of Chase. District Court Action, ECF No. 189.  The Plaintiffs appealed the Orders granting the motion to dismiss and denying the motion to reconsider to the Second Circuit, District Court Action, ECF No. 295 (Notice of Appeal), and the appeal was dismissed, District Court Action,

On July 11, 2019, the District Court entered an Order finding that the District Court Defendants' "noncompliance with [the District Court's] orders warrants an entry of default judgment," and adjourning all trial dates in the District Court Action *sine die*. District Court Action, ECF No. 252 at 5-6. The District Court cited "sustained and willful intransigence in the face of repeated and explicit warnings from the Court" on the part of the District Court Defendants, found "that entry of default judgment against the [District Court Defendants to be] appropriate as a sanction pursuant to Rule 37(b)(2)(A)(iii) and (vi)," directed the Plaintiffs to file a brief providing authority for a default judgment, and scheduled a deadline for the District Court Defendants to file opposition to the Plaintiffs' brief and the entry of a default judgment. Compl. ¶ 28. *See* District Court Action, ECF No. 252, at 4-6.

And as noted above, on July 21, 2020, the District Court entered an Order of default judgment in the District Court Action, and referred the matter to Magistrate Judge Cott for an inquest to determine the extent of the damages suffered by the Plaintiffs. District Court Action, ECF No. 267.

On March 31, 2021, Judge Cott entered a Report and Recommendation, finding, as to the RICO claims, that the District Court Defendants had engaged in a RICO enterprise, engaged in predicate acts of mail and wire fraud, created a fraudulent scheme with the specific intent to defraud the Plaintiffs, and that the District Court Defendants were jointly and severally liable for any resulting damages. Compl. ¶ 30; District Court Action, Report and Recommendation, at 12-23. Judge Cott next found that the Plaintiffs had established the elements of common law fraud, that Mr. Barkats was personally liable for the fraud claims, and that the Plaintiffs were

---

ECF No. 296 (Order Dismissing Appeal). Accordingly, and because Chase is not a party to this Adversary Proceeding, these claims will not be addressed further here.

entitled to prejudgment interest on the fraud damages.  Compl. ¶ 30; District Court Action, Report and Recommendation, at 23-30.  Judge Cott further found that the other non-RICO claims asserted in the complaint, apart from IIED and NIED, stemmed from common law fraud and therefore did not need to be addressed in light of the elements of common law fraud having been established.  Compl. ¶ 30; District Court Action, Report and Recommendation, at 30-35.  Judge Cott found that the Plaintiffs had not adequately stated a claim for IIED, but had adequately stated a claim for NIED.  *Id*.  For all these reasons, Judge Cott recommended that the District Court enter a default judgment as to the District Court Defendants.  Compl. ¶ 30; District Court Action, Report and Recommendation, at 43.

Turning to damages, noting that treble damages under RICO are mandatory, and that these damages would wholly compensate the Plaintiffs, Judge Cott found that a separate award for common law fraud damages, apart from the pre-judgment interest, would amount to an impermissible double recovery.  Compl. ¶ 30; District Court Action, Report and Recommendation, at 35-36.  Therefore, Judge Cott recommended that the Plaintiffs be awarded $405,000 in RICO treble damages, plus prejudgment interest at a rate of nine percent per year from May 28, 2015, until the date of judgment.  Compl. ¶ 30; District Court Action, Report and Recommendation, at 39.  Judge Cott further recommended that Ms. Lewis be awarded damages of $165,541.65 for her NIED claim.  Compl. ¶ 30; District Court Action, Report and Recommendation, at 43.

On September 23, 2021, the District Court entered a memorandum opinion and Order adopting the Report and Recommendation in full, granting default judgment in the Plaintiffs' favor, and awarding the Plaintiffs damages as set forth in the Report and Recommendation. Compl. ¶¶ 31-33; District Court Action, ECF No. 291.  And on September 24, 2021, the District

13

Court entered a Default Judgment (the "District Court Judgment") in favor of the Plaintiffs. District Court Action, ECF No. 293.

The Plaintiffs also assert that during the pendency of the District Court Action, Mr. Barkats and the Barkats Firm continued willfully and knowingly to act in a deceitful, fraudulent, and injurious way with respect to them.  Compl. ¶¶ 28, 30, 54, 58; Compl., Exh. A. ¶¶ 109, 113-14.

Mr. Barkats's Departure from the United States

The Plaintiffs allege that in December 2018, Mr. Barkats left the United States, and has not returned to the United States since.  Compl. ¶¶ 34-41.

Mr. Barkats's Actions During the Pendency of His Chapter 7 Bankruptcy Case

The Plaintiffs aver that Mr. Barkats commenced his Bankruptcy Case in bad faith, as a tool to further delay and evade his obligations to the Plaintiffs.  Compl. ¶¶ 42-43.  They state that Mr. Barkats has made false representations under oath to the Court, the Chapter 7 Trustee, and the creditors.  Compl. ¶¶ 44-50, 67-68.  The Plaintiffs indicate that these misrepresentations include Mr. Barkats's denial that he has used certain other aliases during the years preceding his commencement of the Bankruptcy Case; his representation that he lives at an address in Kew Gardens, New York; his failure to disclose information related to his property and financial affairs; and his failure to disclose the secret or fraudulent transfer of his assets during the pendency of the District Court Action.  Compl. ¶¶ 48-50.  Finally, the Plaintiffs aver that during the pendency of the Bankruptcy Case, Mr. Barkats has not satisfactorily explained losses of assets or a deficiency of assets to meet his liabilities.  Compl. ¶¶ 45-51, 72.

*The Motion to Dismiss*

On May 19, 2025, Mr. Barkats moved to dismiss the Complaint.  ECF No. 6.  In the

14

Motion to Dismiss, Mr. Barkats argues that each of the Plaintiffs' four claims against him should be dismissed for failure to state a plausible claim upon which relief may be granted. Mot. to Dismiss at 2-3.

As to the Plaintiffs' Section 523(a)(2)(A) nondischargeability claim, Mr. Barkats argues that it should be dismissed because the "Plaintiffs rely on a default judgment issued in prior civil litigation, but fail to plead that the debt was incurred through fraud in the bankruptcy sense." Mot. to Dismiss at 2.

As to the Plaintiffs' Section 523(a)(6) nondischargeability claim, Mr. Barkats argues it should be dismissed because the "Plaintiffs allege injury from business transactions, not targeted injury with specific intent. The conclusory claim of willfulness and malice is insufficient." Mot. to Dismiss at 2.

Finally, as to the Plaintiffs' Section 727(a)(4) and 727(a)(5) denial of discharge claims, Mr. Barkats argues they should be dismissed because the "Plaintiffs fail to plead which assets were omitted, and how such omissions were material." Mot. to Dismiss at 2-3.

The Plaintiffs' Opposition

On July 8, 2025, the Plaintiffs filed opposition to Mr. Barkats's Motion to Dismiss, opposing the motion on several grounds. ECF No. 9 (the "Opposition" or "Opp.").

First, the Plaintiffs respond that the Motion to Dismiss is untimely, because the deadline to file a responsive pleading to the Complaint was April 21, 2025.[3] Opp. at 5-6. Nevertheless,

---

[3] The Plaintiffs state the deadline for opposition to the Complaint was April 19, 2025, in their Opposition, Opp. at 6, but the Summons states that the deadline is April 21, 2025. ECF No. 3 (the "Summons"). Notably, April 19, 2025, was a Saturday, so Monday, April 21, 2025, is the correct deadline. *See* Fed. R. Bankr. P. 9006(a)(1) (noting that when computing any time period, "if the last day is a Saturday . . . the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday").

15

they acknowledge that they consented to extend Mr. Barkats's deadline to respond to the Complaint to April 30, 2025. Opp. at 6. The Plaintiffs argue that, because the Motion to Dismiss and an accompanying request to extend the applicable deadline were not filed until May 19 and May 20, 2025, respectively, they nevertheless are untimely. *Id*.

Next, the Plaintiffs respond that the Motion to Dismiss should be denied because it was improperly filed as one single PDF document or file, as opposed to several distinct documents within a single ECF entry, and because the Motion to Dismiss did not include a return date. *Id*. The Plaintiffs argue that this is a violation of this Court's Local Rule 9004-2, and that the Court should exercise its discretion and deny the motion due to this procedural defect. Opp. at 6-7.

Third, the Plaintiffs respond that the Motion to Dismiss is without merit, because the Complaint sets forth sufficient facts to state plausible causes of action against Mr. Barkats under Bankruptcy Code Sections 523(a)(2)(A) and 523(a)(6) for nondischargeability, and Sections 727(a)(4) and 727(a)(5) for denial of discharge. Opp. at 7-11.

As to their Section 523(a)(2)(A) claim, the Plaintiffs respond that the Complaint adequately describes the false pretenses, representations, and actual fraud in which Mr. Barkats has engaged. Opp. at 8. They argue that they have adequately alleged the facts that constitute the basis for the RICO claim in the District Court Action, the predicate acts of mail and wire fraud for the RICO claim, evidence of Mr. Barkats's fraudulent misuse of the Lewis Fund Account, and how this conduct directly and proximately caused them harm. Opp. at 8-9.

As to their Section 523(a)(6) claim, the Plaintiffs respond that they have alleged "conduct evidencing 'deliberate injury, conversion or other tortious conduct' by [Mr. Barkats] that goes beyond a mere breach of contract or negligence." Opp. at 9 (quoting *McCarthy v. Radcliffe* (*In re Radcliffe*), 317 B.R. 581, 589 (Bankr. D. Conn. 2004)). They note that "'[m]alice, intent,

16

knowledge, and other conditions of a person's mind may be alleged generally.'"  Opp. at 9-10

(quoting Fed. R. Civ. P. 9(b), and citing *Major, Lindsey & Africa, LLC v. Mahn* (*In re Mahn*),

666 B.R. 883, 898-99 (Bankr. S.D.N.Y. 2025) (denying a motion to dismiss and noting that "the

presence of malice is a question of fact, not one fit for resolution on a motion to dismiss")).

As to their Section 727(a)(4) claim, the Plaintiffs respond that they have sufficiently

alleged a plausible claim for denial of Mr. Barkats's discharge.  Opp. at 10.  They note that in the

Complaint, they have identified specific statements and representations made by Mr. Barkats

during the pendency of the Bankruptcy Case – including specifically as to his aliases, residency,

and financial affairs.  *Id*.

Finally, as to their Section 727(a)(5) claim, the Plaintiffs respond here too, that they have

sufficiently alleged a claim.  *Id*.  They argue that the Complaint specifically avers that Mr.

Barkats has not adequately explained the loss of assets from his estate.  *Id*.

*The Court's October 20, 2025, Hearing on the Motion to Dismiss*

On October 20, 2025, the Court held a hearing and oral argument on the Motion to

Dismiss, at which the Plaintiffs and Mr. Barkats, each by counsel, appeared and were heard, and

the record is now closed.  ECF No. 13.  *See* October 20, 2025, hearing transcript (the "Oct. 20

Tr.").

**The Applicable Legal Standards**

*The Pleading Requirements of Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding

by Bankruptcy Rule 7012, permits a party to seek dismissal of an action at the pleading stage if it

does not state a claim upon which relief may be granted.  As the Supreme Court has held, for a

complaint to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough

17

facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 570 (2007).  As the Court explained, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (citation omitted).

When considering a motion to dismiss under Rule 12(b)(6), the court should "'accept[] all factual allegations as true, and draw . . . all reasonable inferences in the plaintiff's favor.'"  *DiFolco*, 622 F.3d at 110-11 (alteration in original) (quoting *Shomo*, 579 F.3d at 183).  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993) (accepting as true the complaint's factual allegations and drawing inferences in the pleader's favor).  But a court is not required to accept as true those allegations that amount to no more than legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009); *Twombly*, 550 U.S. at 555.

In deciding a Rule 12(b)(6) motion, a court may look to the facts alleged in the complaint, and also to those "[d]ocuments that are attached to the complaint or incorporated in it by reference."  *Roth* v. *Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  *See Gillingham v. Geico Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (quoting *Hayden v. Cty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)) (stating that when considering a Rule 12(b)(6) motion to dismiss, a court may look to the complaint, its exhibits, and documents incorporated by reference).

And claims involving allegations of fraud trigger particular and heightened pleading requirements under Federal Rule of Civil Procedure 9(b), made applicable here by Bankruptcy Rule 7009.  *S&T Bank v. Howard* (*In re Howard*), 2009 WL 4544392, at *2 (Bankr. S.D.N.Y. Nov. 25, 2009).  To satisfy the pleading requirements of Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  As the Second Circuit has held, the complaint must "(1) specify the statements that the plaintiff

18

contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).

*The Elements of a Bankruptcy Code Section 523(a)(2)(A) Claim*

Bankruptcy Code Section 523(a)(2)(A) excepts from discharge "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).

To state a plausible Section 523(a)(2)(A) claim, a plaintiff must allege five elements:

> first, that the debtor made a false representation; second, that the debtor knew the representation was false at the time it was made; third, that the debtor made the false representation with the intent to deceive the creditor; fourth, that the creditor justifiably relied on the representation; and finally, that the creditor sustained a loss that was proximately caused by the false representation.

*First Am. Title Ins. Co. v. Moses* (*In re Moses*), 547 B.R. 21, 35 (Bankr. E.D.N.Y. 2016) (citing *Fleet Credit Card Servs., L.P. v. Macias* (*In re Macias*), 324 B.R. 181, 187 (Bankr. E.D.N.Y. 2004) (citation omitted)).

The first element, that the debtor made a false representation, requires allegations showing that "'(1) the defendant made a false or misleading statement (2) with intent to deceive (3) in order for the plaintiff to turn over money or property to the defendant.'" *Parklex Assocs. v. Deutsch* (*In re Deutsch*), 575 B.R. 590, 599 (Bankr. S.D.N.Y. 2017) (quoting *Frishberg v. Janac* (*In re Janac*), 407 B.R. 540, 552 (Bankr. S.D.N.Y. 2009)). "Omissions of fact can qualify as false representations: '[a] false representation can be shown through either an express statement or through an omission where the circumstances are such that disclosure is necessary to correct what would otherwise be a false impression.'" *In re Deutsch*, 575 B.R. at 599

19

(alteration in original) (quoting *Signature Bank v. Banayan* (*In re Banayan*), 468 B.R. 542, 574-75 (Bankr. N.D.N.Y. 2012) (citations omitted)).

The second element, that the debtor knew that the representation was false at the time it was made, turns on the debtor's "actual state of mind . . . at the time" that the misrepresentation was made. *In re Moses*, 547 B.R. at 36 (citing *In re Parkhurst*, 202 B.R. 816, 822 (Bankr. N.D.N.Y. 1996)). And this element is adequately alleged "if the maker of the representation knew or believed that the matter was not as represented, did not have confidence in the accuracy of his or her representations, or knew that he or she did not have a basis to make the representations." *In re Moses*, 547 B.R. at 36 (citing *AT&T Universal Card Servs. v. Mercer* (*In re Mercer*), 246 F.3d 391, 407 (5th Cir. 2001)).

As the *Restatement* (*Second*) *of Torts* states:

A misrepresentation is fraudulent if the maker

(a)    knows or believes that the matter is not as he represents it to be,

(b)    does not have the confidence in the accuracy of his representation that he states or implies, or

(c)    knows that he does not have the basis for his representation that he states or implies.

Restatement (Second) of Torts § 526 (Am. L. Inst. 1977). *See In re Moses*, 547 B.R. at 36.

The third element, that the debtor made the false representation with the intent to deceive the creditor, requires a plaintiff to aver that the conduct was "'marked by moral turpitude' or that the misconduct was an 'intentional wrong.'" *In re Moses*, 547 B.R. at 37 (quoting *New York v. Suarez* (*In re Suarez*), 367 B.R. 332, 349-50 (Bankr. E.D.N.Y. 2007)). And "while recklessness may be a sufficient basis to infer knowledge, it does not, without more, demonstrate a deliberate intention to cheat or mislead." *In re Suarez*, 367 B.R. at 350.

For example, "one court found that a debtor's act of executing closing documents without reading them was reckless but did not rise 'to the level of actual fraud or deceit as required by [Section] 523(a)(2)(A).'" *In re Moses*, 547 B.R. at 37-38 (alteration in original) (quoting *Haney v. Copeland* (*In re Copeland*), 291 B.R. 740, 766 (Bankr. E.D. Tenn. 2003)).  Courts in the Second Circuit have also held that "'intent to deceive may be inferred when the totality of the circumstances presents a picture of deceptive conduct by the debtor, which indicates that he did intend to deceive and cheat the [creditor].'" *In re Suarez*, 367 B.R. at 349 (alteration in original) (quoting *H.K. Deposit and Guar. Co. v. Shaheen* (*In re Shaheen*), 111 B.R. 48, 53 (S.D.N.Y. 1990)).

As to the fourth element, that the debtor justifiably relied on the false representation, a plaintiff's allegations must satisfy the requirement, as the Supreme Court has stated, that a creditor must "'use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Field v. Mans*, 516 U.S. 59, 71 (1995) (quoting Restatement (Second) of Torts § 541, cmt. a (Am. L. Inst. 1977)).

And finally, as to the fifth element, that the creditor sustained a loss that was proximately caused by the debtor's false representation, a plaintiff's allegations must be sufficient plausibly to show "a causal connection between the [false representation] and the loss suffered." *Moog Emps. Fed. Credit Union v. Kibler* (*In re Kibler*), 172 B.R. 740, 742 (Bankr. W.D.N.Y. 1994). For this element to be met, the allegations must state, in substance, that the false representation is a "material cause" for the loss suffered by the creditor, but "it need not be the only factor for the resulting debt to be nondischargeable." *Montalto v. Florence N. Sobel, Inc.* (*In re Sobel*), 37 B.R. 780, 786 (Bankr. E.D.N.Y. 1984) (citations omitted).

*The Elements of a Bankruptcy Code Section 523(a)(6) Claim*

As this Court has previously held, the elements of a Section 523(a)(6) are:

> [F]irst, that the debtor acted willfully, second, that the debtor acted maliciously, and third, that the debtor's willful and malicious actions caused injury to the plaintiff or the plaintiff's property. And "to promote the 'fresh start' policy of the Bankruptcy Code, courts narrowly construe the exceptions to dischargeability enumerated in § 523(a)(6)." *Cocoletzi v. Orly* (*In re Orly*), 2016 WL 4376947, at *3 (Bankr. S.D.N.Y. Aug. 10, 2016).

*Wu v. Lin* (*In re Lin*), 576 B.R. 32, 41 (Bankr. E.D.N.Y. 2017).

As to the first element, that the debtor acted willfully, the Bankruptcy Code does not set forth a definition of "willful." The Supreme Court has observed that "'willful' in [Section] 523(a)(6) means 'deliberate or intentional.'" *Kawaauhau v. Geiger*, 523 U.S. 57, 61 n.3 (1998). *See Navistar Fin. Corp. v. Stelluti* (*In re Stelluti*), 94 F.3d 84, 87 (2d Cir. 1996) (same). The Supreme Court also noted that the kind of intent necessary in construing this section of the Bankruptcy Code is similar to that of intentional torts, which "generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'" *Kawaauhau*, 523 U.S. at 61-62 (emphasis in original) (quoting Restatement (Second) of Torts § 8A, cmt. a, p. 15 (Am. L. Inst. 1964). And the Supreme Court stated that "[a] wilful disregard . . . which necessarily causes injury and is done intentionally, may be said to be done wilfully and maliciously." *Tinker v. Colwell*, 193 U.S. 473, 487 (1904).

As to the second element, that the debtor acted maliciously, the Bankruptcy Code likewise does not set forth a definition of "malicious." The Second Circuit has concluded that the term "malicious" in this context means "'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.'" *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (quoting *In re Stelluti*, 94 F.3d at 87).

22

And "[t]he conduct complained of must be intended to or necessarily cause injury in order for the debt to be determined to be nondischargeable." *Yash Raj Films (USA) v. Ahmed* (*In re Ahmed*), 359 B.R. 34, 41 (Bankr. E.D.N.Y. 2005).  In *In re Ahmed*, the court concluded that because the finding that the debtor deliberately disregarded warnings "was necessary to the District Court's judgment, the subsumed finding of malice may be given preclusive effect." *In re Ahmed*, 359 B.R. at 43.

In addition, as this Court previously noted, "[m]alice may also be implied from 'the acts and conduct of the debtor in the context of [the] surrounding circumstances.'" *Yash Raj Films (USA) Inc. v. Akhtar* (*In re Akhtar*), 368 B.R. 120, 131–32 (Bankr. E.D.N.Y. 2007) (alteration in original) (quoting *In re Ahmed*, 359 B.R. at 42).  This Court also noted that "a court may find malice 'when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another.'" *In re Akhtar*, 368 B.R. at 132 (citation omitted).

And malice is not the same as willfulness.  As another court observed, "the terms 'willful' and 'malicious' are separate elements with distinct meanings." *In re Orly*, 2016 WL 4376947, at *3.  And each must be adequately alleged to state a plausible claim for Section 523(a)(6) relief.

As to the third element, that the debtor's actions caused injury to the plaintiff or its property, a plaintiff must plausibly allege that "[t]he conduct complained of must be intended to or necessarily cause injury in order for the debt to be determined to be nondischargeable." *In re Ahmed,* 359 B.R. at 41.

23

*The Elements of a Bankruptcy Code Section 727(a)(4) Claim*

Bankruptcy Code Section 727(a)(4) addresses fraud and dishonesty in the bankruptcy process. As the Supreme Court has observed, "[o]ne of the 'main purpose[s]' of the federal bankruptcy system is 'to aid the unfortunate debtor by giving him a fresh start in life, free from debts, except of a certain character.'" *Lamar*, *Archer & Cofrin*, *LLP v. Appling*, 584 U.S. 709, 715 (2018) (alteration in internal quotation in original) (quoting *Stellwagen v. Clum*, 245 U.S. 605, 617 (1918)).

But the relief of discharge is available only to honest debtors. In this regard, the debtor bears the responsibility to provide complete disclosure and cooperation in the bankruptcy process to warrant the discharge of their debt. And this means that a debtor may not pick and choose among the required information to be disclosed. Nor may a debtor omit disclosures that they prefer not to make, or view as pointless, immaterial, or irrelevant to the administration of the bankruptcy estate. Viewed another way, transparency is simply a hallmark of the bankruptcy process.

Bankruptcy Code Section 727(a)(4) provides that a debtor's discharge may be denied if "the debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account; (B) presented or used a false claim; . . . or (D) withheld from an officer of the estate entitled to possession under this title, any recorded information." 11 U.S.C. § 727(a)(4)(A)-(B), (D). Many courts have held that "[b]ecause denial of a discharge is a harsh sanction, courts construe these factors strictly in favor of the debtor." *Beer Sheva Realty Corp. v. Pongvitayapanu* (*In re Pongvitayapanu*), 487 B.R. 130, 139 (Bankr. E.D.N.Y. 2013) (citing *State Bank of India v. Chalasani* (*In re Chalasani*), 92 F.3d 1300, 1310 (2d Cir. 1996)).

Section 727(a)(4)(A)

To state a plausible Section 727(a)(4)(A) claim, a plaintiff must plead five elements: "(1) [the debtor] made statements under oath in connection with his bankruptcy case; (2) the statements were false; (3) [the debtor] knew the statements were false; (4) [the debtor] made the statements with fraudulent intent; and (5) the statements materially related to [the debtor's] bankruptcy case." *Web Holdings, LLC v. Cedillo* (*In re Cedillo*) (hereinafter "*Cedillo I*"), 573 B.R. 451, 477 (Bankr. E.D.N.Y. 2017). *See Dubrowsky v. Estate of Perlbinder* (*In re Dubrowsky*), 244 B.R. 560, 572 (E.D.N.Y. 2000) (citing *Beaubouef v. Beaubouef* (*In re Beaubouef*), 966 F.2d 174, 178 (5th Cir. 1992)) (holding that gross discrepancies in the debtor's amended statement of financial affairs, together with the debtor's omissions of jointly owned property, established at a minimum a reckless disregard for the truth that was the functional equivalent of fraud under Section 727(a)(4)(A)); *Congress Talcott Corp. v. Sicari* (*In re Sicari*), 187 B.R. 861, 880 (Bankr. S.D.N.Y. 1994) (holding that the debtor's intentional concealment and failure to disclose certain transfers in his bankruptcy petition, and failure to disclose his equitable interest in transferred assets, amounted to a false oath under Section 727(a)(4)(A)).

As to the first element, that the debtor made a statement under oath in connection with their bankruptcy case, it is well established that "statements made during examination of a bankrupt [are] 'serious business.'" *In re Robinson*, 506 F.2d 1184, 1189 (2d Cir. 1974) (quoting *Diorio v. Kreisler-Borg Construction Co.* (*In re Diorio*), 407 F.2d 1330, 1331 (2d Cir. 1969)). *See Carver Fed. Sav. Bank v. Cedillo* (*In re Cedillo*) (hereinafter "*Cedillo II*"), 573 B.R. 405, 444 (Bankr. E.D.N.Y. 2017) (holding that statements made at a Section 341 meeting are made under "oath" for purposes of a Section 727(a)(4) claim).

25

And the scope of this obligation extends beyond the statements made by the debtor at the Section 341 meeting.  Instead, "[a] false statement or omission in the debtor's petition, schedules, or statements, satisfies the requirement of a false oath."  *In re Pongvitayapanu*, 487 B.R. at 140.  At the same time, some kind of oath or attestation is part of this picture, and not every remark, comment, or observation that is part of the record of a bankruptcy case is made under oath.

As to the second element, that the statements under oath were false, "a 'statement,'" for purposes of discharge objection based on false oath or account, "may be either an omission or an affirmative statement."  *O'Hearn v. Gormally* (*In re Gormally*), 550 B.R. 27, 55 (Bankr. S.D.N.Y. 2016).

As to the third element, that the debtor knew the statements under oath were false, "[t]he statutory requirement of 'knowingly' mandates only that the defendant's act be voluntary and intentional – it does not require that a defendant know that the conduct violates the law."  *Castillo v. Casado* (*In re Casado*), 187 B.R. 446, 450 (Bankr. E.D.N.Y. 1995).  *See Bordonaro v. Fido's Fences, Inc.* (*In re Bordonaro*), 565 B.R. 222, 233 (E.D.N.Y. 2017) (holding that based on the debtor's familiarity with his own finances, as well as his level of sophistication and education, it was reasonable to infer that when he filed his bankruptcy petition, he knew or should have known that the statements were false).

At the same time, the bare assertion that a debtor *knowingly* made a false statement is not, standing alone, sufficient to satisfy a plaintiff's obligation to state a plausible claim.  As this Court and others have observed, "'[a] statement is considered to have been made with knowledge of its falsity if it was known by the debtor to be false, made without belief in its truth, or made with reckless disregard for the truth.'"  *Cedillo II*, 573 B.R. at 446 (quoting *U.S. Trustee*

*v. Manno-DeGraw* (*In re Manno-DeGraw*), 2016 WL 3708062, at \*2 (Bankr. E.D.N.Y. July 6, 2016)).

As to the fourth element, that the debtor made the statements under oath with fraudulent intent, it is well settled that for purposes of Section 727(a)(4), allegations concerning a debtor's intent to defraud may be based on inferences drawn from circumstantial evidence or a debtor's course of conduct. *In re Dubrowsky*, 244 B.R. at 573 (citing *Zitwer v. Kelly* (*In re Kelly*), 135 B.R. 459, 462 (Bankr. S.D.N.Y. 1992)).

To discern the adequacy of allegations of intent under the reckless disregard standard, courts consider several factors, including

> (a) the serious nature of the information sought and the necessary attention to detail and accuracy in answering; (b) a debtor's lack of financial sophistication as evidenced by his or her professional background; and (c) whether a debtor repeatedly blamed recurrent errors on careless or failed to take advantage of an opportunity to clarify or correct inconsistencies.

*Ng v. Adler* (*In re Adler*), 494 B.R. 43, 77 (Bankr. E.D.N.Y. 2013) (internal quotations and citations omitted).

Fraudulent intent may also be based on averments of "actual fraud," including "the traditional badges of fraud, or by the debtor's reckless disregard for the truth of his statements." *Capital One Equip. Fin. Corp. v. Singh* (*In re Singh*), 585 B.R. 330, 338-39 (Bankr. E.D.N.Y. 2018) (citing *In re Adler*, 494 B.R. at 77).

And finally, as to the fifth element, that the statements under oath related materially to the debtor's bankruptcy case, courts within and outside the Second Circuit agree that the test for materiality "is whether the false statement relates to the debtor's business transactions or estate or whether it is pertinent to the discovery of assets or the existence or disposition of property." *Scheidelman v. Henderson* (*In re Henderson*), 423 B.R. 598, 618 (Bankr. N.D.N.Y. 2010) (citing

*Wisell v. Wisell* (*In re Wisell*), 2007 WL 2463268, at \*3 (D. Vt. Aug. 28, 2007)).  *See Chalik v. Moorefield* (*In re Chalik*), 748 F.2d 616, 618 (11th Cir. 1984) (per curiam) (holding that materiality is established if the debtor's statement "bears a relationship to the [debtor]'s business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of [his] property.").

But denial of discharge is a harsh remedy.  Allegations that amount to no more than a false but immaterial or irrelevant statement do not set forth a plausible basis to meet the requirements of this element.  At the same time, "'materiality does not require . . . that the creditors were prejudiced by the false statement.'"  *Carlucci & Legum v. Murray* (*In re Murray*), 249 B.R. 223, 229 (E.D.N.Y. 2000) (quoting *In re Robinson*, 506 F.2d at 1188).

<u>Section 727(a)(4)(B)</u>

To state a claim for relief under Bankruptcy Code Section 727(a)(4)(B) "a plaintiff must allege facts demonstrating that the debtor (i) knowingly and fraudulently, (ii) presented or used a false claim, (iii) in or in connection with the debtor's own case." *Atlantic City v. Drummon* (*In re Drummon*), 2024 WL 628605, at \*8 (Bankr. S.D.N.Y. Feb. 14, 2024) (citing 6 Collier on Bankruptcy ¶ 727.05 (Richard Levin & Henry J. Sommer eds., 16th ed. 2023)).  And courts have noted that "the case law is clear that the term 'claim,' as used in the statute, 'generally refers to "bankruptcy claims" as defined in 11 U.S.C. § 101(5) (i.e., rights to payments) rather than assertions, representations, and statements.'" *In re Drummon*, 2024 WL 628605, at \*8 (quoting *Crowder v. Wilbur* (*In re Wilbur*), 574 B.R. 782, 798 (Bankr. N.D. Ga. 2017)).

<u>Section 727(a)(4)(D)</u>

Bankruptcy Code Section 727(a)(4)(D) provides that a debtor's discharge should be denied if "the debtor knowingly and fraudulently . . . withheld from an officer of the estate

entitled to possession . . . any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs."  11 U.S.C. § 727(a)(4)(D). *See Pereira v. Young* (*In re Young*), 346 B.R. 597, 614-15 (Bankr. E.D.N.Y. 2006).

A debtor is under an affirmative duty to "surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate."  11 U.S.C. § 521(a)(4).  As noted by one court, "Section 727(a)(4)(D) enforces this obligation by denying discharge to debtors who intentionally withhold records, books, documents, or other papers relating to their property or financial affairs."  *Clark v. Tieszen* (*In re Tieszen*), 1999 WL 669263, at \*7 (Bankr. N.D. Ill. Aug. 24, 1999).

To state a claim for denial of discharge under Section 727(a)(4)(D), a plaintiff must plausibly allege that the debtor "knowingly and fraudulently" withheld from an officer of the estate recorded information relating to the debtor's property or financial affairs.  11 U.S.C. § 727(a)(4)(D).

That is, "the intent required under [Section 727(a)(4)(D)] must be actual, as distinguished from constructive, intent."  *Gold v. Guttman* (*In re Guttman*), 237 B.R. 643, 647 (Bankr. E.D. Mich. 1999) (alteration in original) (citing *Bank of Pa. v. Adlman* (*In re Adlman*)*,* 541 F.2d 999, 1003 (2d Cir. 1976)).  "Because actual intent is difficult to prove directly, it may be established from circumstantial evidence or inferred from the debtor's conduct." *In re Young*, 346 B.R. at 615 (quoting *In re Guttman*, 237 B.R. at 647; citing *In re Tieszen,* 1999 WL 669263 at \*7).  That is, in order plausibly to allege the requisite intent, a plaintiff must set forth allegations that, if proven, would meet this test, whether directly or circumstantially.

29

*The Elements of a Bankruptcy Code Section 727(a)(5) Claim*

Bankruptcy Code Section 727(a)(5) provides that "[t]he court shall grant the debtor a discharge unless . . . the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). As this Court has noted:

> "By penalizing a debtor who is insufficiently forthcoming about what happened to his assets, section 727(a)(5) is one of several Code provisions meant to relieve creditors and courts of the full burden of reconstructing the debtor's financial history and condition, placing it instead upon the debtor."

*In re Young*, 346 B.R. at 618 (quoting *Structured Asset Services, L.L.C. v. Self* (*In re Self*), 325 B.R. 224, 250 (Bankr. N.D. Ill. 2005)).

To state a plausible Section 727(a)(5) claim, the movant must assert that the "'debtor has failed to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities.'" *Pereira v. Gardner* (*In re Gardner*), 384 B.R. 654, 668 (Bankr. S.D.N.Y. 2008) (quoting 11 U.S.C. § 727(a)(5)). This can be shown by "any unexplained disappearance or shortage of assets" and "does not require a showing of fraudulent intent." *In re Gardner*, 384 B.R. at 668 (citing *Nof v. Gannon* (*In re Gannon*), 173 B.R. 313 (Bankr. S.D.N.Y. 1994)). A "prima facie case under this section [only] requires the plaintiff to produce evidence of the disappearance of substantial assets." *In re Gardner*, 384 B.R. at 668 (citing *D.A.N. Joint Venture v. Cacioli* (*In re Cacioli*), 463 F.3d 229, 238 (2d Cir. 2006)).

*Local Bankruptcy Rule 7012-1*

This Court's Local Bankruptcy Rule 7012-1 states:

The deadline to plead or move in response to a complaint or other pleading in an adversary proceeding may be extended . . . [and that] any motion for extension of time to plead or move in response to a complaint or other pleading in an adversary proceeding or a stipulation seeking entry of an order approving such extension shall be filed with the Court prior to the expiration of the deadline to be extended.

E.D.N.Y. LBR 7012-1.

*Local Bankruptcy Rule 9006-1*

This Court's Local Bankruptcy Rule 9006-1(a) provides that "[u]ntimely papers may not be considered by the Court. Any party filing papers with the Court within 3 days prior to a hearing date shall contact chambers to advise that such papers have been filed."  E.D.N.Y. LBR 9006-1(a).

*Local Bankruptcy Rule 9004-2*

This Court's Local Bankruptcy Rule 9004-2(c) provides "the return date and time of a motion shall be included in the upper right hand corner of the caption of the motion and all related papers."  E.D.N.Y. LBR 9004-2(c).

### Discussion

Mr. Barkats's Motion to Dismiss calls for the Court to consider whether the allegations of the Complaint are sufficient to support each of the claims made in the Complaint – that is, to determine whether Plaintiffs state plausible claims for relief on each count.  But first, as a threshold matter, the Court will consider the Plaintiffs' arguments in their Opposition that the Motion to Dismiss must be denied because it is untimely and otherwise procedurally defective.

Next, the Court will consider Mr. Barkats's arguments that test the sufficiency of the Complaint.  In doing so, the Court first considers whether Mr. Barkats has shown that the Plaintiffs do not state a plausible claim that their debts should be excluded from Mr. Barkats's bankruptcy discharge under Bankruptcy Code Sections 523(a)(2)(A) and 523(a)(6).

And finally, the Court will consider whether Mr. Barkats has shown that the Plaintiffs do not state a plausible claim that Mr. Barkats's discharge should be denied in its entirety under Bankruptcy Code Sections 727(a)(4) and 727(a)(5).

*Whether Mr. Barkats's Motion to Dismiss Should Be Denied as Untimely and Procedurally Deficient*

In their Opposition, the Plaintiffs argue that Mr. Barkats's Motion to Dismiss was untimely and deficient due to the form of the filing, and that for these reasons alone, it should be denied.  Opp. at 5-7.

Timeliness.  The Plaintiffs contend that the Motion to Dismiss was not timely, and therefore, it must be denied.  Opp. at 5-6.  The deadline to file a responsive pleading to the Complaint established by the Court was April 21, 2025, ECF No. 3, and the parties consented to extend Mr. Barkats's deadline to respond to the Complaint to April 30, 2025.  Opp. at 6.

On April 30, 2025, before the deadline to respond, Mr. Barkats filed a motion to extend his time to answer or otherwise respond to the Complaint to May 19, 2025, but he filed that motion on the docket of the Bankruptcy Case, and not the Adversary Proceeding.  *In re Barkats*, ECF No. 61.  Thereafter, on May 19, 2025, Mr. Barkats filed the Motion to Dismiss in this Adversary Proceeding.  ECF No. 6.

To be sure, this Court's Local Rules provide that "[u]ntimely papers may not be considered by the Court."  E.D.N.Y. LBR 9006-1.  But they also provide that a deadline to respond to a complaint may be extended, provided that the request to extend is "filed with the Court prior to the expiration of the deadline to be extended."  E.D.N.Y. LBR 7012-1.  And, as the Plaintiffs' own Opposition acknowledges, "it is firmly established that the Court has 'broad discretion when addressing violations of the local rules.'"  *Galati v. Navarette* (*In re Galati*), 2016 WL 238552, at *2 (Bankr. E.D.N.Y. Jan. 19, 2016) (quoting *Searight v. Doherty Enters.*, 2005 WL 2413590, at *1 (E.D.N.Y. Sept. 29, 2005)).

Moreover, the Federal Rules of Bankruptcy Procedure, like the Local Rules, are to "be construed, administered, and employed by both the court and the parties to secure the just,

speedy, and inexpensive determination of every case and proceeding." Fed. R. Bankr. P. 1001(a). As the Advisory Committee notes to Rule 1001 state, this rule recognizes "the affirmative duty of the court to exercise the authority conferred by these rules to ensure that bankruptcy cases and the proceedings within them are resolved not only fairly, but also without undue cost or delay." Fed. R. Bankr. P. 1001, advisory committee's note to 2017 amendments.

Here, the record shows that, in substance, Mr. Barkats met the requirements of the Local Rules by filing an application to extend his time to respond to the Complaint before that time expired, and a response in the form of this Motion to Dismiss within that period. Dismissal on this ground would not be compatible with Bankruptcy Rule 1001's direction to construe procedural rules to accomplish the "just, speedy, and inexpensive determination of every case and proceeding." Fed. R. Bankr. P. 1001(a). Nor, in this Court's view, would it be a sound exercise of this Court's discretion.

Accordingly, based on the entire record, the Court finds and concludes that the Motion to Dismiss was timely, and declines to deny the Motion to Dismiss on these grounds.

Deficiency as to Form. The Plaintiffs also argue that the Motion to Dismiss should be denied because it was improperly filed as one single PDF document, as opposed to several distinct documents within one ECF entry, and because the filing did not include a return date in violation of this Court's Local Rule 9004-2. Opp. at 6-7.

At the outset, the Plaintiffs do not cite a Local Bankruptcy Rule or other source of authority directing how a motion should be filed – as a single PDF file, multiple PDF files, or some other way. Nor do they point to a case that has denied a motion on these grounds. And the Court is not aware of such a rule or controlling authority.

In addition, the Court notes that while Local Bankruptcy Rule 9004-2(c) sets forth a requirement that a "return date and time of a motion shall be included in the upper right hand corner of the caption of the motion and all related papers," E.D.N.Y. LBR 9004-2(c), the enforcement of this rule and the consequences of a violation, are once again, a matter left to the discretion of the Court.  *Galati*, 2016 WL 238552, at \*2.

Rather, it is plain from the record that Mr. Barkats's election to file his Motion to Dismiss in this format, and his omission of the information concerning the "return date and time . . . in the upper right hand corner of the caption of the motion and all related papers," did not meaningfully prejudice the Plaintiffs.  E.D.N.Y. LBR 9004-2(c).  And the denial of the Motion to Dismiss on these grounds would not be compatible with Bankruptcy Rule 1001's direction to construe procedural rules to accomplish the "just, speedy, and inexpensive determination of every case and proceeding."  Fed. R. Bankr. P. 1001(a).

Accordingly, based on the entire record, the Court finds and concludes that the Motion to Dismiss substantially complies with the applicable requirements as to form, and declines to deny the Motion to Dismiss on these grounds.

*          *          *

Having determined that the Motion to Dismiss was timely filed, and that it substantially complies with the applicable requirements as to filing and form, the Court now turns to the question of whether Mr. Barkats has shown that the Complaint does not state a plausible claim upon which relief may be granted.

*Whether the Plaintiffs State a Plausible Claim Under Bankruptcy Code Section 523(a)(2)(A)*

In their first cause of action, under Bankruptcy Code Section 523(a)(2)(A), the Plaintiffs seek a declaration that Mr. Barkats's debt to them, as set forth in the District Court Judgment, is

34

nondischargeable because the money that Mr. Barkats took from the Plaintiffs in connection with the formation and management of the Lewis Fund, was taken by false pretenses, false representations, or actual fraud.  Compl. ¶ 54.

To state a plausible dischargeability claim under Section 523(a)(2)(A), the Plaintiffs must allege five elements.  These are:  first, that Mr. Barkats made a false representation; second, that he knew the representation was false at the time it was made; third, that he made the false representation with the intent to deceive the Plaintiffs; fourth, that the Plaintiffs justifiably relied on the representation; and finally, that the Plaintiffs sustained a loss that was proximately caused by the false representation.  *See In re Macias*, 324 B.R. at 187.

And because this claim triggers the particular and heightened pleading requirements for fraud under Federal Rule of Civil Procedure 9(b), the Plaintiffs must specify the assertedly fraudulent statements, identify the speaker of the fraudulent statements, state where and when the fraudulent statements were made, and explain why the statements were fraudulent.  *Rombach*, 355 F.3d at 170.

Notably, in considering the Mr. Barkats's Motion to Dismiss, the Court does not consider whether the Plaintiffs *have shown*, or *are likely to show*, that they can prove each of the elements of their claim.  It is not a "mini trial" on the facts that are asserted in the Complaint.  Rather, and as noted above, on a motion to dismiss under Rule 12(b)(6), the Court must "'accept[] all factual allegations as true, and draw . . . all reasonable inferences in the plaintiff's favor,'" and assess whether they establish a plausible claim for relief.  *DiFolco*, 622 F.3d at 110-11 (alteration in original) (quoting *Shomo*, 579 F.3d at 183).  *See Mills*, 12 F.3d at 1174 (accepting as true the complaint's factual allegations and drawing inferences in the pleader's favor).

At the same time, there is a distinction between factual allegations and legal conclusions.

35

When deciding a motion to dismiss, the Court is not required to accept as true those allegations that amount to no more than legal conclusions. As the Supreme Court has observed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S at 678. *See Twombly*, 550 U.S. at 555. The Supreme Court also noted that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

<u>Whether the Plaintiffs adequately allege that Mr. Barkats made a false representation</u>

The first element that the Plaintiffs must allege to state a plausible Section 523(a)(2)(A) claim is that Mr. Barkats made a false representation to the Plaintiffs. *In re Moses*, 547 B.R. at 36 (citing *In re Macias*, 324 B.R. at 187). In this context, one court has observed that a false representation means that "'(1) the defendant made a false or misleading statement (2) with intent to deceive (3) in order for the plaintiff to turn over money or property to the defendant.'" *In re Deutsch*, 575 B.R. at 599 (quoting *In re Janac*, 407 B.R. at 552).

Here, the Plaintiffs allege in the Complaint, and in the District Court Action complaint that it incorporates, that:

- Mr. Barkats falsely represented to Ms. Lewis that the Second Draft Retainer was substantially similar to the First Draft Retainer, Compl., Exh. A ¶¶ 41-44, 46-50;

- Mr. Barkats falsely represented to Ms. Lewis that the Lewis Fund Agreements were simple formalities necessary for opening a bank account, Compl., Exh. A ¶¶ 54-57, 59;

36

- Mr. Barkats falsely represented to Ms. Lewis that the Lewis Fund had increased in value after he had withdrawn substantial amounts from the Lewis Fund Account, Compl., Exh. A ¶¶ 96-99;

- Mr. Barkats falsely represented to Ms. Lewis that he was unable or not required to provide an accounting of the assets held by the Lewis Fund, Compl., Exh. A ¶¶ 95-99; and

- Mr. Barkats falsely represented to Ms. Lewis that he or the Barkats Firm was conducting an accounting of the Lewis Fund and would provide her with the information, Compl., Exh. A ¶¶ 96-99.

In the Motion to Dismiss, Mr. Barkats does not address or offer any specific argument as to these allegations. Rather, he asserts that the "Plaintiffs rely on a default judgment issued in prior civil litigation" and "fail to plead that the debt was incurred through fraud." Mot. to Dismiss at 2. From time to time, during the Oral Argument, Mr. Barkats suggested that it "hasn't been proven in the complaint that defendant actually committed fraud." Oct. 20 Tr. at 13:4-5. *See* Oct. 20 Tr. at 8:1-4 (same).

At this stage of this adversary proceeding, these arguments miss the mark. At the pleadings stage and on this Motion to Dismiss, the Plaintiffs are not required to *prove* that Mr. Barkats made false statements to assert this element of their claim. They must only *allege* facts sufficient to show that, if they are proven, Mr. Barkats made the requisite false statements.

And here, a review of the Complaint shows that the Plaintiffs have indeed alleged that Mr. Barkats made false statements with the intent to deceive Ms. Lewis for the purpose of having her turn money over to, and leave money with, the District Court Defendants. These include alleged false statements by Mr. Barkats concerning the documents attendant to the formation of

37

the Lewis Fund, the Lewis Fund Account, and false statements by Mr. Barkats about the state of the Lewis Fund and Lewis Fund account in the months following their creation.  Compl. ¶¶ 41-44, 46-50, 54-57, 59, 95-99.

This does not mean that the Plaintiffs have proven those allegations, but the Court does not need to address that question on a Motion to Dismiss.

For these reasons, and based on the entire record, the Court concludes that the Plaintiffs have adequately alleged the first element of their Section 523(a)(2)(A) dischargeability claim, that Mr. Barkats made false statements.

Whether the Plaintiffs adequately allege that, at the time Mr. Barkats made the false representations, he knew that they were false

The second element that the Plaintiffs must allege to state a plausible Section 523(a)(2)(A) claim is that Mr. Barkats knew or believed that the matter was not as represented, did not have confidence in the accuracy of their representations, or knew that he did not have a basis to make the representations.  *In re Moses*, 547 B.R. at 36 (citing *In re Macias*, 324 B.R. at 188).

As set forth in the Restatement (Second) of Torts:

A misrepresentation is fraudulent if the maker

(a)     knows or believes that the matter is not as he represents it to be,

(b)     does not have the confidence in the accuracy of his representation that he states or implies, or

(c)     knows that he does not have the basis for his representation that he states or implies.

Restatement (Second) of Torts § 526 (Am. L. Inst. 1977).  *See In re Moses*, 547 B.R. at 36.

In the Complaint, the Plaintiffs allege that Mr. Barkats had made changes to the Second Draft Retainer that he sent to Ms. Lewis and held out to be substantially the same as the First

38

Draft Retainer.  Compl., Exh. A ¶¶ 41-44, 46-50.  They also allege that Mr. Barkats was aware of the nature of the Lewis Fund Agreements when he sent them to Ms. Lewis under the guise of their being simple formalities.  Compl., Exh. A ¶¶ 54-67.  The Plaintiffs further allege that Mr. Barkats was the one who had taken money out of the Lewis Fund Account before he represented to Ms. Lewis that the Lewis Fund had increased in value.  Compl., Exh. A ¶¶ 76, 78-81, 96-99.  And finally, the Plaintiffs allege that Mr. Barkats falsely represented at times both his intention to provide an accounting and his belief that he was unable to provide one.  Compl., Exh. A ¶¶ 95-99.

Here too, Mr. Barkats does not specifically address these allegations in the Motion to Dismiss.  *See* Mot. to Dismiss at 2; Oct. 20 Tr. at 8:1-4, 13:4-5.  Instead, he states, generally, that the "Complaint fails to allege with specificity any acts of actual fraud, false pretenses, or willful and malicious injury," that he has "not acted with fraudulent intent," and that "[t]he allegations made by Plaintiffs are conclusory, lack factual specificity, and are insufficient to survive a motion to dismiss."  Mot. to Dismiss at 2-3, Declaration of Sunny Joseph Barkats in Support, ¶¶ 4-6.

And here, a review of the Complaint shows that the Plaintiffs have alleged that when Mr. Barkats described the Second Draft Retainer, the Lewis Fund Agreements, and the ongoing operations of the Lewis Fund to Ms. Lewis, he knew that these statements were false.  *See*, *e.g.*, Compl., Exh. A ¶¶ 41-44, 46-50, 54-67, 76, 78-81, 95-99.  And here too, this is different than finding that the Plaintiffs have proven those allegations – but that is a question for another day.

For these reasons, and based on the entire record, the Court concludes that the Plaintiffs have adequately alleged the second element of their Section 523(a)(2)(A) dischargeability claim,

39

that when Mr. Barkats made false statements to the Plaintiffs, he knew that the statements were false.

<u>Whether the Plaintiffs adequately allege that Mr. Barkats made the false representations with the intent to deceive</u>

The third element that the Plaintiffs must allege to state a plausible Section 523(a)(2)(A) claim is that at the time Mr. Barkats made the false representations, he did so with the intent to deceive. *In re Moses*, 547 B.R. at 37 (citing *In re Macias*, 324 B.R. at 192). This Court and others have recognized that a debtor's intent may be inferred from the totality of the circumstances, because direct proof – or precise and detailed allegations – of a debtor's state of mind is generally not available. As one court has stated, "'intent to deceive may be inferred when the totality of the circumstances presents a picture of deceptive conduct by the debtor, which indicates that he did intend to deceive and cheat the [creditor].'" *In re Suarez*, 367 B.R. at 349 (alteration in original) (quoting *In re Shaheen*, 111 B.R. at 53).

In the Complaint, the Plaintiffs allege that Mr. Barkats intended to deceive Ms. Lewis when he held the Second Draft Retainer out to be substantially the same as the First Draft Retainer. Compl., Exh. A ¶¶ 41-44, 46-50. The Plaintiffs also allege that Mr. Barkats intended to deceive Ms. Lewis to prevent her from more fulsomely considering the Lewis Fund Agreements when he characterized them as simple formalities. Compl., Exh. A ¶¶ 54-60.

And again, Mr. Barkats does not specifically address the Plaintiffs' allegations, to explain how they come up short, in his Motion to Dismiss. *See* Mot. to Dismiss at 2; Oct. 20 Tr. at 8:1-4, 13:4-5.

Here, a review of the Complaint shows that the Plaintiffs have met the threshold to plead facts that, together with the inferences that they support, meet the requirement to assert that Mr. Barkats made false representations to them with the intent to deceive. They have alleged facts

that, if proven, support the conclusion that Mr. Barkats was embarked on a path to dissuade the Plaintiffs from uncovering the facts about the status of their investments in the Lewis Fund, and to the same end, made affirmative misrepresentations to them. *See* Compl., Exh. A ¶¶ 41-44, 46-50, 54-60.

For these reasons, and based on the entire record, the Court concludes that the Plaintiffs have adequately alleged the third element of their Section 523(a)(2)(A) dischargeability claim, that Mr. Barkats made the false representations with the intent to deceive.

<u>Whether the Plaintiffs adequately allege that they justifiably relied on Mr. Barkats's false statements</u>

The fourth element that the Plaintiffs must allege to state a plausible Section 523(a)(2)(A) claim is that they relied on Mr. Barkats's false statements. *In re Moses*, 547 B.R. at 38 (quoting *In re Macias*, 324 B.R. at 192). As the Supreme Court has held in this context, a creditor is expected to "'use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Field*, 516 U.S. at 71 (quoting Restatement (Second) of Torts § 541, cmt. a (Am. L. Inst. 1977)).

In the Complaint, the Plaintiffs allege that Ms. Lewis justifiably relied on Mr. Barkats's representation that the Second Draft Retainer was substantially identical to the First Draft Retainer. Compl., Exh. A ¶ 45. They also allege that Ms. Lewis justifiably relied on Mr. Barkats's representations that the Lewis Fund Agreements were simple formalities that needed quickly to be signed. Compl., Exh. A. ¶ 58.

Once more, Mr. Barkats has not specifically addressed whether or how these allegations come up short in his Motion to Dismiss. *See* Mot. to Dismiss at 2; Oct. 20 Tr. at 8:1-4, 13:4-5.

Here again, the Court notes that at the pleadings stage, it does not consider whether the Plaintiffs have *proven* that Ms. Lewis justifiably relied on Mr. Barkats's alleged false representations. Rather, the question that must be answered is whether in the Complaint, facts have been alleged that, if proven, would rise to a plausible claim. And here, a review of the Complaint shows that the Plaintiffs have alleged that they reasonably relied on Mr. Barkats's statements with respect to the nature of the Second Draft Retainer and the Lewis Fund Agreements. And here as well, the question of proof is for another day.

For these reasons, and based on the entire record, the Court concludes that the Plaintiffs have adequately alleged the fourth element of their Section 523(a)(2)(A) dischargeability claim, that they reasonably relied on Mr. Barkats's false statements.

<u>Whether the Plaintiffs adequately allege that Mr. Barkats's false statements proximately caused them to sustain a loss or damages</u>

The fifth and final element that the Plaintiffs must allege to state a plausible Section 523(a)(2)(A) claim is that Mr. Barkats's false statements proximately caused them to sustain a loss or damages. *In re Moses*, 547 B.R. at 39 (citing *In re Macias*, 324 B.R. at 193).

In the Complaint, the Plaintiffs allege that as a result of Mr. Barkats's false statements, the Lewis Fund and the Lewis Fund Account were created. Compl., Exh. A ¶¶ 45, 58, 68-69. The Plaintiffs also allege that the creation of the Lewis Fund and the Lewis Fund Account under the Second Draft Retainer and Lewis Fund Agreements permitted Mr. Barkats to control the Lewis Fund and Lewis Fund Account beyond the limits as understood by the Lewises. Compl., Exh. A ¶¶ 44, 46-50, 60-67, 73. And the Plaintiffs allege that Mr. Barkats's control over the Lewis Fund and Lewis Fund Account permitted Mr. Barkats to be able to withdraw substantial sums from the Lewis Fund Account, divert proceeds from investments made by the Lewis Fund, and divert business opportunities away from the Lewis Fund. Compl., Exh. A ¶¶ 76, 78-81,

91-93.  And this, in turn, they assert, proximately caused them to sustain a loss or damages.  *Id*.

The Plaintiffs point to the District Court Judgment as a measure of the damages that they have

incurred.  Compl. ¶¶ 32-33.

Here, a review of the Complaint shows that the Plaintiffs have alleged that they have

suffered a loss or damages that were proximately caused by Mr. Barkats's averred false

statements.  They have alleged that as a consequence of Mr. Barkats's false representations, Mr.

Barkats was able to deplete the Lewis Fund, and that the Fund was deprived of business

opportunities.  And the Plaintiffs have also alleged, in substance, that these damages form the

basis for the District Court Judgment.

For these reasons, the Court concludes that the Plaintiffs have adequately alleged the fifth

element of their Section 523(a)(2)(A) dischargeability claim, that Mr. Barkats's false statements

proximately caused them to sustain a loss or damages.

<u>Whether the Plaintiffs' Section 523(a)(2)(A) claim satisfies the pleading requirements of Rule 9(b)</u>

Because the Plaintiffs' Section 523(a)(2)(A) dischargeability claim sounds in fraud, the

Court also considers whether this claim meets the heightened pleading standard for fraud claims

established by Federal Rule of Civil Procedure 9(b), made applicable in bankruptcy cases by

Bankruptcy Rule 7009.  That is, the Court must determine whether the Complaint "state[s] with

particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and

other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

As the Second Circuit has held, a complaint alleging fraud must "'(1) specify the

statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where

and when the statements were made, and (4) explain why the statements were fraudulent.'"

*Homaidan v. SLM Corp.* (*In re Homaidan*), 596 B.R. 86, 95 (Bankr. E.D.N.Y. 2019) (quoting

*Rombach*, 355 F.3d at 170 (internal citations omitted)), *aff'd*, 3 F.4th 595 (2d Cir. 2021).

Here, a review of the Complaint shows that the Plaintiffs have specified the statements by

Mr. Barkats that they assert to be fraudulent. These include:

- That the Second Draft Retainer was substantially similar to the First Draft
  Retainer, Compl., Exh. A ¶¶ 41-44, 46-50;

- That the Lewis Fund Agreements were simple formalities necessary for
  opening a bank account, Compl., Exh. A ¶¶ 54-57, 59;

- That the Lewis Fund had increased in value after Mr. Barkats had withdrawn
  substantial amounts from the Lewis Fund Account, Compl., Exh. A ¶¶ 96-99;

- That Mr. Barkats was unable or not required to provide an accounting of the
  assets held by the Lewis Fund, Compl., Exh. A ¶¶ 95-99; and

- That Mr. Barkats or the Barkats Firm was conducting an accounting of the
  Lewis Fund and would provide Ms. Lewis with that information. Compl.,
  Exh. A ¶¶ 96-99.

Accordingly, the Plaintiffs have satisfied the first particularity requirement of Rule 9(b), because

they identify specific statements made by Mr. Barkats that they assert are fraudulent.

Next, a review of the Complaint similarly shows that the Plaintiffs identify the maker of

the allegedly fraudulent statements. That is, as to each, the Plaintiffs allege that Mr. Barkats or

the Barkats Firm made the assertedly fraudulent statements. Compl., Exh. A ¶¶ 41-44, 46-50,

54-57, 59, 95-99. As a consequence, the Plaintiffs have satisfied the second particularity

requirement of Rule 9(b) adequately to allege a fraud claim, because they identify Mr. Barkats as

the maker of the allegedly fraudulent statements.

In addition, a review of the Complaint confirms that the Plaintiffs states where and when the allegedly fraudulent statements were made.  The Plaintiffs allege that, on January 6, 2015, Mr. Barkats made fraudulent representations by email about the Second Draft Retainer.  Compl., Exh. A ¶¶ 43-44.  The Plaintiffs also allege that, on January 26, 2015, the Barkats Firm made the fraudulent representations by email about the Lewis Fund Agreements.  Compl., Exh. A ¶¶ 54, 56-57.  The Plaintiffs allege that, on October 16, 17, and 19, 2015, Mr. Barkats made the fraudulent representations by email about the Lewis Fund and Lewis Fund Account, and the prospect of an accounting.  Compl., Exh. A ¶¶ 96-98.  So, the Plaintiffs have satisfied the third particularity requirement of Rule 9(b) adequately to allege a fraud claim.

Finally, a review of the Complaint shows that the Plaintiffs' allegations set forth explanations as to why Mr. Barkats's statements were fraudulent.  In the Complaint, the Plaintiffs allege that Mr. Barkats made changes to the Second Draft Retainer, and therefore knew it to be inaccurate when he sent it to Ms. Lewis and described it as substantially the same as the First Draft Retainer.  Compl., Exh. A ¶¶ 41-44, 46-50.  The Plaintiffs also allege that Mr. Barkats was aware of the nature of the Lewis Fund Agreements when he sent them to Ms. Lewis under the guise of their being simple formalities, having drafted them in part.  Compl., Exh. A ¶¶ 54-67.  The Plaintiffs further allege that Mr. Barkats knowingly and fraudulently misrepresented to Ms. Lewis that the Lewis Fund had increased in value, when in fact, the value of the Lewis Fund had decreased at the time of this statement, and Mr. Barkats knew this because he had himself withdrawn money from the Lewis Fund before stating that the Lewis Fund's value had increased.  Compl., Exh. A ¶¶ 76, 78-81, 96-99.  And finally, the Plaintiffs allege that Mr. Barkats falsely represented at times both his intention to provide an accounting and his belief that he was unable to provide one.  Compl., Exh. A ¶¶ 95-99.  Therefore, the

Plaintiffs have satisfied the fourth particularity requirement of Rule 9(b) adequately to allege a fraud claim.

In sum, the Plaintiffs' Section 523(a)(2)(A) claim meets the heightened pleading standard for fraud claims established by Federal Rule of Civil Procedure 9(b) for the alleged false statements.

*          *          *

For all of these reasons, the Court finds and concludes that the Plaintiffs have alleged a plausible claim under Bankruptcy Code Section 523(a)(2)(A) that Mr. Barkats's debt to the Plaintiffs should be excluded from his bankruptcy discharge. Therefore, and based on the entire record, the Motion to Dismiss is denied as to the Plaintiffs' Section 523(a)(2)(A) claim.

*Whether the Plaintiffs State a Plausible Claim Under Bankruptcy Code Section 523(a)(6)*

In their second cause of action, under Bankruptcy Code Section 523(a)(6), the Plaintiffs seek a declaration that Mr. Barkats's debt to them, as set forth in the District Court Judgment, is nondischargeable because the injury that the Plaintiffs suffered in connection with his formation and management of the Lewis Fund, was willful and malicious, and deliberately and intentionally caused by him. Compl. ¶¶ 58-59.

To state a plausible dischargeability claim under Section 523(a)(6), the Plaintiffs must allege three elements. These are first, that Mr. Barkats acted willfully; second, that he acted maliciously; and third, that his willful and malicious actions caused injury to the Plaintiffs or the Plaintiffs' property. *In re Lin*, 576 B.R. at 41.

Notably, and as stated above, in considering the Motion to Dismiss, the Court does not consider whether the Plaintiffs *have shown*, or *are likely to show*, that they can prove each of the elements of their claim. Rather, the Court must "'accept[] all factual allegations as true, and

46

draw . . . all reasonable inferences in the plaintiff's favor.'"  *DiFolco*, 622 F.3d at 110-11

(alteration in original) (quoting *Shomo*, 579 F.3d at 183).  *See Mills*, 12 F.3d at 1174 (accepting

as true the complaint's factual allegations and drawing inferences in the pleader's favor).  And

then, the Court must assess whether, if true, they establish a plausible claim for relief.  But the

Court is not required to accept as true those allegations that amount to no more than legal

conclusions.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

> Whether the Plaintiffs adequately allege that Mr. Barkats acted willfully

The first element that the Plaintiffs must allege to state a plausible Section 523(a)(6)

claim is that Mr. Barkats acted willfully.  *In re Lin*, 576 B.R. at 41.  The Bankruptcy Code does

not set forth a definition of "willful."  But the Supreme Court has observed that "'willful' in

[Section] 523(a)(6) means 'deliberate or intentional.'"  *Kawaauhau*, 523 U.S. at 61 n.3 (quoting

S. Rep. No. 95-989, p. 79 (1978) U.S.C. Cong. & Admin. News pp. 5787, 5864; H.R. Rep. No.

95-595, p. 365 (1977) U.S.C. Cong. & Admin. News pp. 5963, 6320).  And, as noted above, this

Court and others have recognized that a debtor's intent may be inferred from the totality of the

circumstances, because direct proof – or precise and detailed allegations – of a debtor's state of

mind is generally not available.  *See In re Suarez*, 367 B.R. at 349 (quoting *In re Shaheen*,

111 B.R. at 53) (noting that "'intent to deceive may be inferred when the totality of the

circumstances presents a picture of deceptive conduct by the debtor, which indicates that he did

intend to deceive and cheat the [creditor]'").

In the Complaint, the Plaintiffs allege that Mr. Barkats intended to deceive Ms. Lewis

when he described the Second Draft Retainer as substantially the same as the First Draft

Retainer.  Compl., Exh. A ¶¶ 41-44, 46-50.  The Plaintiffs also allege that Mr. Barkats intended

to deceive Ms. Lewis to prevent her from more fulsomely considering the Lewis Fund Agreements when he characterized them as simple formalities. Compl., Exh. A ¶¶ 54-60.

Mr. Barkats does not specifically address the adequacy of the Plaintiffs' allegations with respect to these asserted facts and this element of their Section 523(a)(6) claim. He argues that the "Plaintiffs allege injury from business transactions, not targeted injury with specific intent." Mot. to Dismiss at 2.

Here again, the Court notes that at the pleadings stage, it does not consider whether the Plaintiffs have *proven* that Mr. Barkats acted willfully. Rather, the question that must be answered is whether in the Complaint, these matters have been sufficiently alleged to give rise to a plausible claim. And here, a review of the Complaint shows that the Plaintiffs have alleged that Mr. Barkats acted with intent to deceive Ms. Lewis. The question of proof is for another day.

For these reasons, and based on the entire record, the Court concludes that the Plaintiffs have adequately alleged the first element of their Section 523(a)(6) dischargeability claim, that Mr. Barkats acted willfully with respect to the Plaintiffs.

<u>Whether the Plaintiffs adequately allege that Mr. Barkats acted maliciously</u>

The second element that the Plaintiffs must allege to state a plausible Section 523(a)(6) claim is that Mr. Barkats acted maliciously. *In re Lin*, 576 B.R. at 41. Once more, the Bankruptcy Code does not set forth a definition of "malice." The Second Circuit has concluded that the term "malicious" in this context means "'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.'" *Ball*, 451 F.3d at 69 (quoting *In re Stelluti*, 94 F.3d at 87). And "[t]he conduct complained of must be intended to or necessarily cause injury in order for the debt to be determined to be nondischargeable." *In re Ahmed*, 359

48

B.R. at 41.  Whether circumstances are sufficiently aggravating to support a finding of malice is a fact-specific determination made on a case-by-case basis and a court "should look to the totality of the circumstances to determine malice."  *Bressler v. Bressler* (*In re Bressler*), 387 B.R. 446, 455 (Bankr. S.D.N.Y. 2008).  And again, a debtor's intent may be inferred from the totality of the circumstances, because direct proof of a debtor's state of mind is generally not available.  *See In re Suarez*, 367 B.R. at 349.

Again, Mr. Barkats has not raised a specific argument as to these facts in his Motion to Dismiss.  *See* Mot. to Dismiss at 2.  Instead, he asserts generally that the "Complaint fails to allege with specificity any acts of actual fraud, false pretenses, or willful and malicious injury," that he has "not acted with fraudulent intent," and that "the allegations made by Plaintiffs are conclusory, lack factual specificity, and are insufficient to survive a motion to dismiss."  Mot. to Dismiss at 2-3, Declaration of Sunny Joseph Barkats in Support, ¶¶ 4-6.

In the Complaint, the Plaintiffs allege that Mr. Barkats and the Barkats Firm's actions in connection with the establishment of the Lewis Fund, Lewis Fund Agreements, and Lewis Fund Account were "wrongful" because they were deceptive and intended to cause injury by providing Mr. Barkats with the ability to control and manipulate the assets of the Lewis Fund and Lewis Fund Account.  Compl., Exh. A ¶ 116.  *See* Compl., Exh A ¶¶ 41-44, 46-50, 54-60.  The Plaintiffs also allege that Mr. Barkats withdrew substantial sums from the Lewis Fund Account, diverted proceeds from investments made by the Lewis Fund, and diverted business opportunities away from the Lewis Fund.  Compl., Exh. A ¶¶ 76, 78-81, 91-93.  These actions, they assert, were wrongful and directly injurious to the Plaintiffs.

Once more, the Court notes that in the context of a motion to dismiss, it does not consider whether the Plaintiffs have *proven* that Mr. Barkats acted willfully, but rather, whether in the

Complaint, these matters have been alleged to give rise to a plausible claim. And a review of the Complaint shows that the Plaintiffs have plausibly alleged that Mr. Barkats acted maliciously towards the Plaintiffs. The question of proof remains for another day.

For these reasons, and based on the entire record, the Court concludes that the Plaintiffs have adequately alleged the second element of their Section 523(a)(6) dischargeability claim, that Mr. Barkats acted maliciously with respect to the Plaintiffs.

<u>Whether the Plaintiffs adequately allege that Mr. Barkats's willful and malicious actions caused the Plaintiffs injury</u>

The final element that the Plaintiffs must allege to state a plausible Section 523(a)(6) claim is that Mr. Barkats's willful or malicious actions caused the Plaintiffs to suffer injury. *In re Lin*, 576 B.R. at 41.

In the Complaint, the Plaintiffs allege that as a result of Mr. Barkats's false statements, the Lewis Fund and the Lewis Fund Account were created. Compl., Exh. A ¶¶ 45, 58, 68-69. The Plaintiffs allege that the creation of the Lewis Fund and the Lewis Fund Account under the Second Draft Retainer and Lewis Fund Agreements permitted Mr. Barkats to control the Lewis Fund and Lewis Fund Account beyond the limits as understood by the Lewises. Compl., Exh. A ¶¶ 44, 46-50, 60-67, 73. The Plaintiffs also allege that Mr. Barkats's control over the Lewis Fund and Lewis Fund proximately caused them to be damaged as he withdrew substantial sums from the Lewis Fund Account, diverted proceeds from investments made by the Lewis Fund, and diverted business opportunities away from the Lewis Fund. Compl., Exh. A ¶¶ 76, 78-81, 91-93. The Plaintiffs point to the District Court Judgment as a measure of the damages that they have incurred. Compl. ¶¶ 32-33.

Mr. Barkats has not raised a specific argument as to these facts in his Motion to Dismiss. *See* Mot. to Dismiss at 2. Instead, he argues generally that the "Complaint fails to allege with

50

specificity any acts of actual fraud, false pretenses, or willful and malicious injury," that he has "not acted with fraudulent intent," and that "the allegations made by Plaintiffs are conclusory, lack factual specificity, and are insufficient to survive a motion to dismiss."  Mot. to Dismiss at 2-3, Declaration of Sunny Joseph Barkats in Support, ¶¶ 4-6.

For these reasons, and based on the entire record, the Court concludes that the Plaintiffs have adequately alleged the third element of their Section 523(a)(6) dischargeability claim, that Mr. Barkats's willful and malicious actions caused the Plaintiffs to suffer injury.

*          *          *

For all of these reasons, the Court finds and concludes that the Plaintiffs have alleged a plausible claim under Bankruptcy Code Section 523(a)(6) that Mr. Barkats's debt to the Plaintiffs should be excluded from his bankruptcy discharge.  Therefore, and based on the entire record, the Motion to Dismiss is denied as to the Plaintiffs' Section 523(a)(6) claim.

*Whether the Plaintiffs State a Plausible Claim Under Bankruptcy Code Section 727(a)(4)*

In their third cause of action, under Bankruptcy Code Section 727(a)(4), the Plaintiffs seek a declaration denying Mr. Barkats's discharge because he knowingly and fraudulently, in or in connection with the bankruptcy case, "made a false oath or account . . . presented or used a false claim . . . or withheld information from an officer of the estate . . . any recorded information."  Compl. ¶¶ 66-68 (quoting Bankruptcy Code Section 727(a)(4)(A)-(B), (D)).

In the Motion to Dismiss, Mr. Barkats argues that to state a claim under Section 727(a)(4), a plaintiff must allege that that the debtor "knowingly and fraudulently made a false oath or account," and states, without more, that the "Plaintiffs Fail to Plead Grounds for Denial of Discharge under [Section] 727(a)(4)."  11 U.S.C. § 727(a)(4); Mot. to Dismiss at 2.  He also

51

asserts, in substance, that the "Plaintiffs fail to plead which assets were omitted and how such omissions were material." Mot. to Dismiss at 3 (citation omitted).

Here again, in considering the Motion to Dismiss, the Court does not consider whether the Plaintiffs *have shown*, or *are likely to show*, that they can prove each of the elements of their claim. Rather, the Court must "'accept[] all factual allegations as true, and draw . . . all reasonable inferences in the plaintiff's favor.'" *DiFolco*, 622 F.3d at 110-11 (alteration in original) (quoting *Shomo*, 579 F.3d at 183). *See Mills*, 12 F.3d at 1174 (accepting as true the complaint's factual allegations and drawing inferences in the pleader's favor). And then, the Court must assess whether, if true, they establish a plausible claim for relief. But the Court is not required to accept as true those allegations that amount to no more than legal conclusions. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

In this cause of action, the Plaintiffs point to three separate subsections of Section 727(a)(4) – that is, Section 727(a)(4)(A), Section 727(a)(4)(B), and Section 727(a)(4)(D) – in support of their request to deny Mr. Barkats's discharge in his Bankruptcy Case. The Court considers each of these subsections in turn.

<u>Whether the Plaintiffs state a plausible claim under Bankruptcy Code Section 727(a)(4)(A)</u>

The first ground that the Plaintiffs advance in their Section 727(a)(4) denial of discharge claim is Bankruptcy Code Section 727(a)(4)(A). The Plaintiffs seek a declaration denying Mr. Barkats's discharge because he "knowingly or fraudulently, in or in connection with the [bankruptcy] case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A). *See* Compl. ¶¶ 66-69.

The Plaintiffs must allege five elements in order to state a plausible claim to deny Mr. Barkats's discharge under Section 727(a)(4)(A). These are first, that he "made statements under

oath in connection with his [B]ankruptcy [C]ase;" second, that "the statements were false;" third, that he "knew the statements were false;" fourth, that he "made the statements with fraudulent intent;" and finally, that "the statements materially related to [the Debtor's B]ankruptcy [C]ase." *Cedillo I*, 573 B.R. at 477. *See In re Dubrowsky*, 244 B.R. at 572 (citing *In re Beaubouef*, 966 F.2d at 178; *In re Sicari*, 187 B.R. at 880).

Here again, at this stage in this adversary proceeding, in considering Mr. Barkats's Motion to Dismiss, the Court does not consider whether the Plaintiffs *have shown*, or *are likely to show*, that they can prove each of the elements of their claim. Instead, on a motion to dismiss, the Court must accept the factual allegations in the Complaint and the reasonable inferences that they support as true, and must determine whether, if true, they establish a plausible claim for relief.

Whether the Plaintiffs adequately allege that Mr. Barkats made a statement under oath in connection with his Bankruptcy Case. The first element that the Plaintiffs must allege to state a plausible Section 727(a)(4)(A) claim is that Mr. Barkats made a statement under oath in connection with his Bankruptcy Case. *Cedillo I*, 573 B.R. at 477. Courts in this District and Circuit hold that "[a] bankruptcy petition, scheduled, and related statements are declarations made under penalty of perjury and 'constitute a statement under oath for purposes of [Section] 727(a)(4)(A).'" *Pergament v. Gonzalez* (*In re Gonzalez*), 553 B.R. 467, 473-74 (Bankr. E.D.N.Y. 2016) (quoting *In re Gannon*, 173 B.R. at 320).

Courts also agree that a debtor's statements at the Section 341 meeting, which are made under oath, are sufficient to meet this element of a Section 727(a)(4)(A) claim. *See, e.g.*, *Cedillo II*, 573 B.R. at 444 (holding that the debtor's statements at a Section 341 meeting are statements "under oath" in connection with the Bankruptcy Case for purposes of a Section 727(a)(4)(A)

claim).  Additionally, "[o]missions as well as affirmative misstatements qualify as false statements for Section 727(a)(4)(A) purposes."  *In re Adler*, 395 B.R. at 841 (quoting *Republic Credit Corporation I v. Boyer* (*In re Boyer*) 367 B.R. 34, 35 (Bankr. D. Conn. 2007), aff'd 384 B.R. 44 (D. Conn. 2018).  Finally, courts in this District apply this section stringently, as "[e]ven 'one single false oath or account is sufficient to deny a debtor's discharge.'"  *In re Gonzalez*, 553 B.R. at 474 (quoting *TD Bank, N.A. v. Nazzaro* (*In re Nazzaro*), 2013 WL 145627, at *7 (Bankr. E.D.N.Y. Jan. 13, 2013)).

In the Complaint, the Plaintiffs allege that Mr. Barkats's false statements under oath include "(i) statements made in the Petition filed on March 11, 2024; (ii) statements made in the Amended Petitions and Schedules filed on March 25, 2024, May 23, 2024, July 8, 2024, and August 22, 2024; and (iii) statements made during the sessions of the Section 341 Meeting held on July 9, 2024 and February 27, 2025."  Compl. ¶ 46 (citations omitted).

Specifically, the statements that the Plaintiffs identify in the Complaint include:

- Mr. Barkats's statement that he has used no names other than Sunny Joseph Barkats and Sanny Barkats in the last 8 years;

- Mr. Barkats's statement that he lives at 119 82nd Street, Kew Gardens, New York;

- Mr. Barkats's statement in his bankruptcy petition that he has lived in this District for the last 180 days; and

- Mr. Barkats's statement that he has disclosed all of his assets and liabilities when he commenced the Bankruptcy Case.

Compl. ¶¶ 48-49.

Of course, and here again, at the pleadings stage, on this Motion to Dismiss, the Plaintiffs are not required to *prove* that Mr. Barkats made a statement under oath in connection with his Bankruptcy Case in order to state this element of their claim.  Rather, they are required only to *allege* facts sufficient to show that, if they are proven, he did so.

Here, the record shows that the Plaintiffs have identified statements made by Mr. Barkats on his petition, his amendments to the petition, and at the two sessions of the Section 341 meeting sufficient to state the first element of a plausible Section 727(a)(4)(A) claim, that Mr. Barkats made a statement under oath in connection with his Bankruptcy Case.  And so, the Court concludes that the Plaintiffs have adequately alleged the first element of their Section 727(a)(4)(A) denial of discharge claim, that Mr. Barkats made a statement under oath in connection with his Bankruptcy Case.

Whether the Plaintiffs adequately allege that Mr. Barkats's statements under oath in connection with his Bankruptcy Case were false.  The second element that the Plaintiffs must allege to state a plausible Section 727(a)(4) claim is that Mr. Barkats's statements made under oath in connection with his Bankruptcy Case were false.  *Cedillo I*, 573 B.R. at 477.

In the Complaint, the Plaintiffs allege that several of the statements made by Mr. Barkats on his petition, on his amendments to the petition, and at each session of his Section 341 meeting were false.  As noted above, these are:

- Mr. Barkats's statement that he has used no names other than Sunny Joseph Barkats and Sanny Barkats in the last 8 years;

- Mr. Barkats's statement that he lives at 119 82nd Street, Kew Gardens, New York;

55

- Mr. Barkats's statement in his bankruptcy petition that he has lived in this District for the last 180 days; and

- Mr. Barkats's statement that he has disclosed all of his assets and liabilities when he commenced the Bankruptcy Case.

Compl. ¶¶ 48-49.

With respect to each of these statements made by Mr. Barkats in his bankruptcy petition, in his amendments to the petition, and at each session of the Section 341 meeting, the Plaintiffs also allege reasons why the statement is false. Specifically:

- Mr. Barkats's statement that he has used no names other than Sunny Joseph Barkats and Sanny Barkats in the last 8 years, is false because he has in used other names in that time, including "Sunny J. Barkats," "Joseph Barkats," "Joseph S. Barkats," "JS Barkats";

- Mr. Barkats's statement that he lives at 119 82nd Street, Kew Gardens, New York, is false because he has lived in France or Israel since December of 2018;

- Mr. Barkats's statement in his bankruptcy petition that he has lived in this District for the last 180 days, is false because he has not lived in the Eastern District since December of 2018; and

- Mr. Barkats's statement that he has disclosed all of his assets and liabilities when he commenced the Bankruptcy Case is false because he has purposefully omitted material information relating to his property and financial affairs.

Compl. ¶¶ 48-49.

Here too, at the pleadings stage, on this Motion to Dismiss, the Plaintiffs are not required to *prove* that Mr. Barkats made a false statement under oath in connection with his Bankruptcy Case in order to state this element of their claim. Rather, they are required only to *allege* facts sufficient to show that, if they are proven, Mr. Barkats did so.

For these reasons, the Court concludes that the Plaintiffs have adequately alleged the second element of their Section 727(a)(4)(A) denial of discharge claim, that Mr. Barkats made a false statement under oath in connection with his Bankruptcy Case.

<u>Whether the Plaintiffs adequately allege that, at the time Mr. Barkats made the representations under oath in connection with his Bankruptcy Case, he knew that they were false.</u> The third element that the Plaintiffs must allege to state a plausible Section 727(a)(4)(A) claim is that Mr. Barkats knew that his statements under oath in his Bankruptcy Case were false. *Cedillo I*, 573 B.R. at 477. "'A statement is considered to have been made with knowledge of its falsity if it was known by the debtor to be false, made without belief in its truth, or made with reckless disregard for the truth.'" *Cedillo II*, 573 B.R. at 446 (quoting *In re Manno-DeGraw*, 2016 WL 3708062, at *2).

As described above, the Plaintiffs have identified several statements made by Mr. Barkats under oath in his petition, in the amendments to his petition, and at each session of his Section 341 meeting that, they claim, were false. And in each circumstance, the Plaintiffs have alleged reasons why Mr. Barkats's statements are false. These reasons identified by the Plaintiffs are grounded in Mr. Barkats's personal knowledge and experience. For example, the Plaintiffs asserts that Mr. Barkats chose not to identify other aliases he had used in the eight years preceding the filing of his bankruptcy petition in an attempt to "avoid . . . obligations to others;" they assert that he knowingly departed and had not resided in the United States in the years

57

preceding the filing of the bankruptcy petition; and they assert that he intentionally omitted material information about certain assets that he possessed.  Compl. ¶¶ 48-49.

Essentially, for substantially the same reasons that the Plaintiffs have adequately alleged that Mr. Barkats made false statements under oath in his petition, amendments, and at each session of his Section 341 meeting in connection with his Bankruptcy Case, the Plaintiffs have also adequately alleged that Mr. Barkats knew that these statements were false at the time they were made.

Here again, at the pleadings stage, on this Motion to Dismiss, the Plaintiffs are not required to *prove* that Mr. Barkats knowingly made a false statement under oath in connection with his Bankruptcy Case in order to state this element of their claim.  Rather, the Plaintiffs are required only to *allege* facts sufficient to show that, if they are proven, he did so.

For these reasons, the Court concludes that the Plaintiffs adequately alleged the third element of their Section 727(a)(4)(A) denial of discharge claim, that Mr. Barkats knowingly made a false statement under oath in connection with his Bankruptcy Case.

Whether the Plaintiffs adequately allege that Mr. Barkats made the false statements with fraudulent intent.  The fourth element that the Plaintiffs must allege to state a plausible Section 727(a)(4)(A) claim is that Mr. Barkats made the false statements with fraudulent intent.  *Cedillo II*, 573 B.R. at 477.  "'Fraudulent intent must be shown by actual, not constructive fraud.'" *Cedillo II*, 573 B.R. at 466 (quoting *In re Dubrowsky*, 244 B.R. at 571).  At the same time, allegations showing a reckless indifference to the truth may also be sufficient to sustain an action for fraud.  *In re Dubrowsky*, 244 B.R. at 572 (citing *Salomon v. Kaiser* (*In re Kaiser*), 722 F.2d 1574, 1583 (2d Cir. 1983)).

As described above, the Plaintiffs have identified several statements made by Mr. Barkats under oath in his bankruptcy petition, his amendments to the petition, and at each session of his Section 341 meeting that were, the Plaintiffs claim, false.  And, the Plaintiffs have identified reasons why these statements are false.  But a false statement, even a knowingly false statement, may not rise to the level of a statement made with fraudulent intent.  Courts agree that fraudulent intent requires more than falsity, even knowing falsity.  And allegations that satisfy the element of a false statement made with knowledge that it is false may not, without more, meet the additional requirement of a false statement that is made with fraudulent intent.  Courts in this District have held that, "a court may find that a debtor acted with reckless indifference to the truth, and may infer fraudulent intent, 'from a series of incorrect statements and decisions contained in the schedules.'"  *In re Gonzalez*, 553 B.R. at 474 (quoting *Bub v. Rockstone Capital*, 516 B.R. 685, 694 (E.D.N.Y. 2014)).  *See Moreo v. Rossi* (*In re Moreo*), 437 B.R. 40, 62 (E.D.N.Y. 2010) (same).

Here, in the Complaint, the Plaintiffs specifically allege that Mr. Barkats made each of the series of allegedly false statements with the intent to defraud in his petition, his amendments to the petition, and at each session of the Section 341 meetings in his case.  Compl. ¶¶ 44, 47-49.  They also assert that Mr. Barkats did not correct the false statements in the petition with the amendments that he made to his petition.  Compl. ¶¶ 67-68.  And even if he had, in the context of Section 727(a)(4)(A), "the effect of a false statement is not cured by correction in a subsequently filed schedule."  *In re Moreo*, 437 B.R. at 62 (quoting *Weiss v. Winkler*, 2001 WL 423050, at *3 (E.D.N.Y. Mar. 30, 2001)).

For these reasons, the Court concludes that the Plaintiffs have adequately alleged the fourth element of their Section 727(a)(4)(A) denial of discharge claim, that Mr. Barkats

knowingly made a false statement under oath with the intent to defraud in connection with his Bankruptcy Case.

Whether the Plaintiffs adequately allege that Mr. Barkats's false statements materially relate to his Bankruptcy Case. The fifth element that the Plaintiffs must allege to state a plausible Section 727(a)(4)(A) claim is that Mr. Barkats's allegedly false statements materially relate to his Bankruptcy Case. *Cedillo I*, 573 B.R at 477. This requirement reflects the fact that the denial of a debtor's discharge is a significant sanction, and only a false statement that has a material relationship to the debtor's bankruptcy case will trigger this consequence.

Courts look to "whether the false statement relates to the debtor's business transactions or estate or whether it is pertinent to the discovery of assets or the existence or disposition of property." *In re Henderson*, 423 B.R. at 618 (citing *In re Wisell*, 2007 WL 2463268, at *3). Moreover, "[a] false oath is material if it 'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *In re Gonzalez*, 553 B.R. at 474 (quoting *Agai v. Antoniou* (*In re Antoniou*), 515 B.R. 9, 22 (Bankr. E.D.N.Y. 2014)).

In the Complaint, the Plaintiffs allege that several of the fraudulent statements or omissions in Mr. Barkats's bankruptcy petition, his amendments to the petition, and at each session of his Section 341 meeting, have a material relationship to his Bankruptcy Case. Specifically, the Plaintiffs aver that Mr. Barkats's false statements concerning both the names that he has used and the residence that he has maintained in the preceding years were made for the purpose of "avoid[ing] his creditors" and "his contractual and legal obligations to others." Compl. ¶ 48.

60

The Plaintiffs also allege that:

the material documents and information relating to the Debtor's property or financial affairs . . . include:  [the d]ocuments and information regarding assets the Debtor owned at the time this Bankruptcy Case was commenced, such as clothes, a wedding ring, a necklace, [as well as] a license to practice law in the State of New York, a real estate license in France, a life insurance policy, and the contents of an unidentified bank account.

Compl. ¶ 49.

Here, the record shows that the Plaintiffs have alleged facts to show that Mr. Barkats's asserted false statements with respect to his name, residence, and assets were part of an effort to conceal assets, or otherwise to interfere materially with the administration of his Bankruptcy Case.  The Plaintiffs aver that Mr. Barkats misrepresented these matters to make it more difficult for creditors to be made aware of the Bankruptcy Case, and for the Court and Trustee to locate and administer Mr. Barkats's assets.

For these reasons, the Court concludes that the Plaintiffs have adequately alleged the fifth element of their Section 727(a)(4)(A) denial of discharge claim, that the false statements that Mr. Barkats knowingly made under oath with the intent to defraud in connection with his Bankruptcy Case, were material to his Bankruptcy Case.

*          *          *

For these reasons, and based on the entire record, the Court finds and concludes that the Plaintiffs have adequately alleged a plausible claim under Bankruptcy Code Section 727(a)(4)(A).

Whether the Plaintiffs state a plausible claim under Bankruptcy Code Section 727(a)(4)(B)

The second ground that the Plaintiffs advance in their Section 727(a)(4) denial discharge claim is Bankruptcy Code Section 727(a)(4)(B).  The Plaintiffs seek a declaration denying Mr.

Barkats's discharge because he "knowingly or fraudulently, in or in connection with the [bankruptcy] case . . . presented or used a false claim." 11 U.S.C. § 727(a)(4)(A). *See* Compl. ¶¶ 66-69.

Courts agree that to state a plausible claim for relief under Section 727(a)(4)(B), a plaintiff must allege that "the debtor (i) knowingly and fraudulently, (ii) presented or used a false claim, (iii) in or in connection with the debtor's own case." *In re Drummon*, 2024 WL 628605, at *8 (citing 6 Collier on Bankruptcy ¶ 727.05, at 727-43 (Richard Levin & Henry J. Sommer eds., 16th ed.)). *See Bordonaro v. Fido's Fences, Inc. (In re Bordonaro)*, 543 B.R. 692, 703 (Bankr. E.D.N.Y. 2016) (holding that under Section 727(a)(4)(B), for a discharge to be denied, "the debtor must have presented or used, with intent to defraud, inflated or fictitious claims in [their] bankruptcy case"). That is, the centerpiece of a Section 727(a)(4)(B) claim for denial of discharge is an inflated or fictitious "false claim," by the debtor, in the debtor's own bankruptcy case. 11 U.S.C. § 727(a)(4)(B).

As one court in this District has noted, "the case law is clear that the term 'claim,' as used in the statute, 'generally refers to "bankruptcy claims" as defined in 11 U.S.C. § 101(5) (i.e., rights to payments) rather than assertions, representations, and statements.'" *In re Drummon*, 2024 WL 628605, at *8 (quoting *Crowder v. Wilbur (In re Wilbur)*, 574 B.R. 782, 798 (Bankr. N.D. Ga. 2017)). There, the court held that a discharge should not be denied where the party seeking the denial of discharge "uses the term 'claim' only in the colloquial sense, as a factual representation – not as [a] bankruptcy claim within the meaning of [S]ection 101(5)." *In re Drummon*, 2024 WL 628605, at *8.

To the same effect, as another bankruptcy court observed, successful objections to discharge under Section 727(a)(4)(B) "generally involve the scheduling of non-existent debts,

62

the scheduling of inflated debts, or the filing by the debtor of a false proof of claim." *In re Henderson*, 423 B.R. at 619.

As a consequence, in order to state a plausible claim to deny Mr. Barkats's discharge under Bankruptcy Code Section 727(a)(4)(B), the Plaintiffs must allege four elements. These are: first, that Mr. Barkats presented a claim in his Bankruptcy Case; second, that the claim was "false," that is, inflated or fictitious; third, that Mr. Barkats presented the false claim knowingly; and finally, that he presented the false claim fraudulently.

Here again, at this stage in this adversary proceeding, in considering Mr. Barkats's Motion to Dismiss, the Court does not consider whether the Plaintiffs *have shown*, or *are likely to show*, that they can prove each of the elements of their claim. Instead, on a motion to dismiss, the Court must accept the factual allegations in the Complaint and the reasonable inferences that they support as true, and must determine whether, if true, they establish a plausible claim for relief.

Whether the Plaintiffs adequately allege that Mr. Barkats presented a claim in his Bankruptcy Case. The first element that the Plaintiffs must allege to state a plausible Section 727(a)(4)(B) claim is that Mr. Barkats presented a claim in his Bankruptcy Case. Within the context of a bankruptcy case, this means that the Plaintiffs must have alleged that Mr. Barkats scheduled a debt or filed a proof of claim in the Bankruptcy Case.

In the Complaint, the Plaintiffs allege that in Mr. Barkats's bankruptcy petition, his amendments to the petition, and at each session of the Section 341 meeting, Mr. Barkats has acknowledged and scheduled certain claims or liabilities. Compl. ¶ 48. They state that Mr. Barkats represented that "he has disclosed all of his assets and liabilities" while, in fact "he has purposefully omitted material information related to his property and financial affairs." *Id*. That

63

is, the Plaintiffs have adequately alleged facts to show that Mr. Barkats has presented a claim in his case, within the meaning of Section 727(a)(4)(B).

For these reasons, the Court concludes that the Plaintiffs have adequately alleged the first element of their Section 727(a)(4)(B) denial of discharge claim, that Mr. Barkats presented a claim in his Bankruptcy Case.

Whether the Plaintiffs adequately allege that the claim that Mr. Barkats presented in his case was false.  The second element that the Plaintiffs must allege to state a plausible Section 727(a)(4)(B) claim is that the claim Mr. Barkats presented in his case was "false" – that is, inflated or fictitious.  And inflated or fictitious claims generally take the form of "non-existent debts," "inflated debts," or "false proof[s] of claim" filed by the debtor.  *In re Henderson*, 423 B.R. at 619.

And here, the record shows that while the Plaintiffs allege that Mr. Barkats has made many misrepresentations and omissions in connection with his Bankruptcy Case, including with respect to his name, his location, and his assets, they do not assert that Mr. Barkats somehow presented claims for "non-existent debts," "inflated debts," or "false proof[s] of claim" in his Bankruptcy Case.  *Id*.  Indeed, if anything, the Plaintiffs make frequent reference to assets and liabilities that Mr. Barkats *omitted* to identify in connection with his case, but not to "inflated or fictitious" claims.  *In re Henderson*, 423 B.R. at 619.  As a consequence, here, as in *In re Drummon*, the Plaintiffs appear to "use[] the term 'claim' only in the colloquial sense, as a factual representation – not as [a] bankruptcy claim."  *In re Drummon*, 2024 WL 268605, at *8.

For these reasons, and based on the entire record, the Court concludes that the Plaintiffs have not adequately alleged the second element of their Section 727(a)(4)(B) denial of discharge

64

claim, that Mr. Barkats presented a false claim reflecting "non-existent debts," "inflated debts," or a "false proof[s] of claim" in his Bankruptcy Case. *In re Henderson*, 423 B.R. at 619.

Whether the Plaintiffs adequately allege that Mr. Barkats knowingly presented a false claim in his Bankruptcy Case. The third element that the Plaintiffs must allege to state a plausible Section 727(a)(4)(B) claim is that Mr. Barkats knowingly presented a false claim in his Bankruptcy Case. "'A statement is considered to have been made with knowledge of its falsity if it was known by the debtor to be false, made without belief in its truth, or made with reckless disregard for the truth.'" *Cedillo I*, 573 B.R. at 446 (quoting *In re Manno-DeGraw*, 2016 WL 3708062, at *2).

Here, the Court has already concluded that the Plaintiffs have not adequately alleged that Mr. Barkats presented a false claim reflecting "non-existent debts," "inflated debts," or a "false proof[s] of claim" in his Bankruptcy Case. *See In re Henderson*, 423 B.R. at 619. For these same reasons, and based on the entire record, the Court concludes that the Plaintiffs have not adequately alleged the third element of their Section 727(a)(4)(B) denial of discharge claim, that Mr. Barkats knowingly presented a false claim in his Bankruptcy Case.

Whether the Plaintiffs adequately allege that Mr. Barkats presented a false claim with fraudulent intent. The fourth element that the Plaintiffs must allege to state a plausible Section 727(a)(4)(B) claim is that Mr. Barkats presented the false claim in his Bankruptcy Case with fraudulent intent. "'Fraudulent intent must be shown by actual, not constructive fraud.'" *Cedillo II*, 573 B.R. at 466 (citing *In re Dubrowsky*, 244 B.R. at 571). Allegations showing a reckless indifference to the truth may also be sufficient to sustain an action for fraud. *In re Dubrowsky*, 244 B.R. at 572 (citing *In re Kaiser*, 722 F.2d at 1583).

Here as well, the Court has already concluded that the Plaintiffs have not adequately alleged that Mr. Barkats presented a false claim reflecting "non-existent debts," "inflated debts," or a "false proof[s] of claim" in his Bankruptcy Case. *See In re Henderson*, 423 B.R. at 619. For these same reasons, and based on the entire record, the Court concludes that the Plaintiffs have not adequately alleged the fourth element of their Section 727(a)(4)(B) denial of discharge claim, that Mr. Barkats presented a false claim with fraudulent intent in his Bankruptcy Case.

*          *          *

For these reasons, and based on the entire record, the Court finds that the Plaintiffs have not adequately alleged a plausible claim under Bankruptcy Code Section 727(a)(4)(B).

<u>Whether the Plaintiffs state a plausible claim under Bankruptcy Code Section 727(a)(4)(D)</u>

The third ground that the Plaintiffs advance in their Section 727(a)(4) denial of discharge claim is Bankruptcy Code Section 727(a)(4)(D). The Plaintiffs seek a declaration denying Mr. Barkats's discharge because he "knowingly and fraudulently . . . withheld from an officer of the estate entitled to possession . . . any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs." 11 U.S.C. § 727(a)(4)(D). *See* Compl. ¶¶ 66-69.

Courts in this District have interpreted Section 727(a)(4)(D) to impose "an affirmative duty on [a debtor] to cooperate with the trustee 'by providing all requested documents to the trustee for his review, and failure to do so constitutes grounds for denial of discharge.'" *In re Gardner*, 384 B.R. 654, 668 (Bankr. S.D.N.Y. 2008) (quoting *Thaler v. Erdheim* (*In re Erdheim*), 197 B.R. 23, 28 (Bankr. E.D.N.Y. 1996)).

To state a plausible claim for denial of discharge under Section 727(a)(4)(D), the objecting party must allege facts that, if proven, establish that the debtor withheld from an officer

of the estate recorded information relating to the debtor's property or financial affairs, and that the debtor did so "knowingly and fraudulently."  11 U.S.C. § 727(a)(4)(D).  *See In re Young*, 346 B.R. at 614-15.  In essence, therefore, the Plaintiffs must allege three elements in order to state a plausible claim to deny Mr. Barkats's discharge under Section 727(a)(4)(D).  These are: first, that Mr. Barkats withheld recorded information from an officer of the estate; second, that he withheld that information knowingly; and third, that he withheld that information fraudulently.

Here again, at this stage in this adversary proceeding, in considering Mr. Barkats's Motion to Dismiss, the Court does not consider whether the Plaintiffs *have shown*, or *are likely to show*, that they can prove each of the elements of their claim.  Instead, on a motion to dismiss, the Court must accept the factual allegations in the Complaint and the reasonable inferences that they support as true, and must determine whether, if true, they establish a plausible claim for relief.

Whether the Plaintiffs adequately allege that Mr. Barkats withheld recorded information from an officer of the estate.  The first element that the Plaintiffs must allege to state a plausible Section 727(a)(4)(D) claim is that Mr. Barkats withheld recorded information from an officer of the estate.

In the Complaint, the Plaintiffs allege that in his bankruptcy petition, his amendments to the petition, and at each session of the Section 341 meeting, Mr. Barkats omitted to mention numerous assets that he held, including, "*inter alia*, clothes, a wedding ring, a necklace, a license to practice law in the State of New York, a real estate license in France, a life insurance policy, and the contents of an unidentified bank account."  Compl. ¶¶ 48-49.  The Plaintiffs also allege that Mr. Barkats did not provide the Chapter 7 Trustee with a copy of a petition filed against him in an attorney grievance matter, and a Chapter 7 means test calculation (Official Form 122A-2)

67

– each of which the Plaintiffs allege the Chapter 7 Trustee requested during the July 9, 2024, session of the Section 341 meeting.  Compl. ¶ 49.  All of these are allegations of information that Mr. Barkats did not provide to the Chapter 7 Trustee.

Here again, at the pleadings stage, on this Motion to Dismiss, the Plaintiffs are not required to *prove* that Mr. Barkats withheld recorded information from an officer of the estate in order to state this element of their claim.  Rather, the Plaintiffs are required only to *allege* facts sufficient to show that, if they are proven, he did so.

And here, the Plaintiffs have adequately alleged facts to show that Mr. Barkats withheld information from an officer of the estate, within the meaning of Section 727(a)(4)(D).  For these reasons, the Court concludes that the Plaintiffs have adequately alleged the first element of their Section 727(a)(4)(D) denial of discharge claim, that Mr. Barkats withheld recorded information from an officer of the estate.

Whether the Plaintiffs adequately allege that Mr. Barkats knowingly withheld recorded information from an officer of the estate.  The second element that the Plaintiffs must allege to state a plausible Section 727(a)(4)(D) claim is that Mr. Barkats withheld the recorded information from an officer of the estate knowingly.

As described above, the Plaintiffs have identified several items of information that Mr. Barkats withheld from the Chapter 7 Trustee in this case.  And in each circumstance, the Plaintiffs have alleged that Mr. Barkats knowingly withheld that information.  Compl. ¶ 49. These reasons identified by the Plaintiffs are grounded in Mr. Barkats's personal knowledge and experience.  The Plaintiffs assert that Mr. Barkats intentionally omitted material information about certain assets that he possessed.  Compl. ¶¶ 48-49.  The Plaintiffs further assert that Mr. Barkats knew he was withholding the petition filed against him in an attorney grievance matter

and  Chapter 7 means test calculation, because the Chapter 7 Trustee explicitly requested during the July 9, 2024, session of the Section 341 meeting that Mr. Barkats turn them over.  Compl. ¶ 49.

Once more, at the pleadings stage, on this Motion to Dismiss, the Plaintiffs are not required to *prove* that Mr. Barkats knowingly withheld this recorded information from an officer of the estate in order to state this element of their claim.  Rather, the Plaintiffs are required only to *allege* facts sufficient to show that, if they are proven, he did so.

And here, the Plaintiffs have adequately alleged facts to show that Mr. Barkats knowingly withheld recorded information from an officer of the estate, within the meaning of Section 727(a)(4)(D).  For these reasons, the Court concludes that the Plaintiffs have adequately alleged the second element of their Section 727(a)(4)(D) denial of discharge claim, that Mr. Barkats knowingly withheld recorded information from an officer of the estate.

Whether the Plaintiffs adequately allege that Mr. Barkats fraudulently withheld recorded information from an officer of the estate.  The third element that the Plaintiffs must allege to state a plausible Section 727(a)(4)(D) claim is that Mr. Barkats withheld the recorded information from an officer of the estate fraudulently.  "'Fraudulent intent must be shown by actual, not constructive fraud.'"  *Cedillo II*, 573 B.R. at 466 (citing *In re Dubrowsky*, 244 B.R. at 571).  Allegations showing a reckless indifference to the truth may also be sufficient to sustain an action for fraud.  *In re Dubrowsky*, 244 B.R. at 572 (citing *In re Kaiser*, 722 F.2d at 1583).

As described above, the Plaintiffs have identified information that Mr. Barkats withheld from the Chapter 7 Trustee.  And, the Plaintiffs have adequately alleged that Mr. Barkats withheld that information knowingly.  But, as with false statements, withholding information

69

*knowingly* does not by default rise to the level of a withholding information *with fraudulent intent*.

Viewed another way, courts agree that fraudulent intent requires more than just knowledge.  This Court has found that "the requisite intent to act 'knowingly and fraudulently' was present where the debtor's conduct was evasive or persistently uncooperative" but not "where the records were unavailable through no fault of the debtor."  *In re Young*, 346 B.R. 615.  And courts in this District have found that, with respect to Section 727(a)(4)(A), "a court may find that a debtor acted with reckless indifference to the truth, and may infer fraudulent intent, 'from a series of incorrect statements and decisions contained in the schedules.'"  *In re Gonzalez*, 553 B.R. at 474 (quoting *Rockstone Capital*, 516 B.R. at 694).  *See In re Moreo*, 437 B.R. at 62 (same).

Here, in the Complaint, the Plaintiffs allege that Mr. Barkats repeatedly, and with fraudulent intent, failed to disclose information about the assets he owned in his bankruptcy petition, his amendments to the petition, and at each session of the Section 341 meetings in his case.  Compl. ¶¶ 44, 47-49.  They aver further that Mr. Barkats did not correct the false statements in the petition with the amendments that he made to his petition.  This is the type of "evasive or persistently uncooperative" behavior that Section 727(a)(4)(D) contemplates.  *In re Young*, 346 B.R. at 615.

At the same time, as to the petition filed against him in an attorney grievance matter and Chapter 7 means test calculation identified by the Plaintiffs, they do not aver any repeated instances of Mr. Barkats failure to turn this information over, and do not allege any basis for there being fraudulent intent for Mr. Barkats's withholding this information beyond a bald assertion that he withheld it "knowingly and fraudulently."  Compl. ¶ 49.

70

Once more, at the pleadings stage, on this Motion to Dismiss, the Plaintiffs are not required to *prove* that Mr. Barkats fraudulently withheld this recorded information from an officer of the estate in order to state this element of their claim. Rather, the Plaintiffs are required only to *allege* facts sufficient to show that, if they are proven, he did so.

And here, the Plaintiffs have adequately alleged facts to show that Mr. Barkats withheld recorded information regarding the assets that the Debtor owned from an officer of the estate with fraudulent intent, within the meaning of Section 727(a)(4)(D), but the Plaintiffs have not adequately alleged facts to show that he withheld the petition filed against him in an attorney grievance matter and Chapter 7 means test calculation with fraudulent intent. For these reasons, the Court concludes that the Plaintiffs have adequately alleged the third element of their Section 727(a)(4)(D) denial of discharge claim, that Mr. Barkats knowingly withheld recorded information from an officer of the estate, but only with respect to information concerning the assets that the Debtor owned at the time the Bankruptcy Case was commenced, and not with respect to the petition filed against him in an attorney grievance matter and Chapter 7 means test calculation.

*          *          *

For these reasons, and based on the entire record, the Court finds that the Plaintiffs have adequately alleged a claim under Bankruptcy Code Section 727(a)(4)(D) in part.

*          *          *

In sum, and based on the entire record, the Court finds and concludes that (i) the Plaintiffs have adequately alleged a claim under Section 727(a)(4)(A); (ii) the Plaintiffs have not adequately alleged a claim under Section 727(a)(4)(B); (iii) the Plaintiffs have in part adequately

alleged a claim under Section 727(a)(4)(D); and (iv) the Plaintiffs have in part not adequately alleged a claim under Section 727(a)(4)(D).

Therefore, and based on the entire record, (i) the Motion to Dismiss is denied as to the Plaintiffs' Section 727(a)(4)(A) claim; (ii) the Motion to Dismiss is granted as to the Plaintiffs' Section 727(a)(4)(B) claim; (iii) the Motion to Dismiss is denied in part as to the Plaintiffs' Section 727(a)(4)(D) claim, specifically with respect to information concerning the assets that the Debtor owned at the time the Bankruptcy Case was commenced; and (iv) the Motion to Dismiss is granted in part as to the Plaintiffs' Section 727(a)(4)(D) claim, specifically with respect to the petition filed against him in an attorney grievance matter and Chapter 7 means test calculation.

### The Elements of a Bankruptcy Code Section 727(a)(5) Claim

In their fourth cause of action, under Bankruptcy Code Section 727(a)(5), the Plaintiffs seek a declaration denying Mr. Barkats's discharge because he "has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). *See* Compl. ¶ 72.

To state a plausible claim under Section 727(a)(5), the Plaintiffs must "allege a loss or deficiency of assets and [Mr. Barkats's] failure to satisfactorily explain the loss." *Aspire Fed. Credit Union v. Robinson* (*In re Robinson*), 595 B.R. 148, 161 (Bankr. S.D.N.Y. 2019). The Plaintiffs are not required to establish that Mr. Barkats acted with fraudulent intent. *Sonders v. Mezvinsky* (*In re Mezvinsky*), 265 B.R. 681, 690 (Bankr. E.D. Penn. 2001) (noting that Bankruptcy Code Section 727(a)(5) includes no subjective element to establish intent to defraud).

72

In this claim for a denial of Mr. Barkats's discharge, the Plaintiffs assert that Mr. Barkats omitted numerous of his assets in his bankruptcy petition and the amendments to that petition, including, "*inter alia*, clothes, a wedding ring, a necklace, a license to practice law in the State of New York, a real estate license in France, a life insurance policy, and the contents of an unidentified bank account." Compl. ¶¶ 48-49. And they allege that, "[u]pon information and belief, the Debtor has not explained – and will be unable to explain – satisfactorily the losses or deficiencies of his assets." Compl. ¶ 51.

The Plaintiffs also assert that during Mr. Barkats's Section 341 meeting on July 9, 2024, several of these assertedly omitted assets, including clothing, a wedding ring, a necklace, professional licenses, a life insurance policy, and a bank account, were identified, but that Mr. Barkats did not identify these items in an amendment to his bankruptcy petition. Compl. ¶ 49. And the Plaintiffs aver that Mr. Barkats "secreted or otherwise fraudulent[ly] transferred substantial assets during the pendency of the District Court Action and prior to fleeing the country for France." Compl. ¶ 50.

In seeking the dismissal of this claim, Mr. Barkats's Motion to Dismiss states that the "Plaintiffs fail to plead which assets were omitted and how such omissions were material." Mot. to Dismiss at 3 (citations omitted).

Here, the record shows that contrary to Mr. Barkats's summary assertion in the Motion to Dismiss, the Complaint identifies several assets of likely consequence to his Bankruptcy Case, including personal property, jewelry, and financial assets such as a life insurance policy and bank account. *See* Compl. ¶ 49. And the Plaintiffs also aver that Mr. Barkats "secreted or otherwise fraudulent[ly] transferred" these and other "substantial assets." Compl. ¶ 50.

73

Here again, at the pleadings stage, on this Motion to Dismiss, the Plaintiffs are not required to *prove* that Mr. Barkats failed to explain satisfactorily the loss of assets or the deficiency of assets to meet his liabilities.  They must only *allege* facts sufficient to state a plausible claim, if they are proven, that Mr. Barkats has failed to explain satisfactorily the loss of assets or a deficiency of assets to meet his liabilities.

And here, the record shows that the Plaintiffs have met that standard.  That is, a review of the Complaint shows that the Plaintiffs have alleged that Mr. Barkats has failed to identify and account for numerous assets including clothing, a wedding ring, a necklace, a license to practice law in the State of New York, a real estate license in France, a life insurance policy, and a bank account.  Compl. ¶¶ 48-51.  And they assert, in substance, that rather than explain "loss of assets or deficiency of assets," Mr. Barkats hid those assets and fled the country.  Compl. ¶ 50; 11 U.S.C § 727(a)(5).

For these reasons, the Court finds and concludes that the Plaintiffs have alleged a plausible claim that Mr. Barkats should be denied a discharge under Bankruptcy Code Section 727(a)(5) because Mr. Barkats has failed to explain satisfactorily the loss of assets or deficiency of assets to meet his liabilities.  Therefore, and based on the entire record, the Motion to Dismiss is denied as to the Section 727(a)(5) claim.

### Conclusion

For the reasons stated herein, and based on the entire record, the Court finds and concludes that:

(i) the Motion to Dismiss was timely, and substantially complies with the applicable requirements as to form under Local Bankruptcy Rules 7012-1, 9004-2(c), and 9006-1, and the Court declines to deny the Motion to Dismiss on these grounds;

(ii) the Plaintiffs have alleged a plausible claim under Bankruptcy Code Section 523(a)(2)(A), and the Motion to Dismiss is denied as to that claim;

(iii) the Plaintiffs have alleged a plausible claim under Bankruptcy Code Section 523(a)(6), and the Motion to Dismiss is denied as to that claim;

(iv) the Plaintiffs have alleged a plausible claim under Bankruptcy Code Section 727(a)(4)(A), and the Motion to Dismiss is denied as to that claim;

(v) the Plaintiffs have not alleged a plausible claim under Bankruptcy Code Section 727(a)(4)(B), and the Motion to Dismiss is granted as to that claim;

(vi) the Plaintiffs have alleged a plausible claim under Bankruptcy Code Section 727(a)(4)(D) in part, specifically with respect to information concerning the assets that the Debtor owned at the time the Bankruptcy Case was commenced, and the Motion to Dismiss is denied as to that claim;

(vii) the Plaintiffs have not alleged a plausible claim under Bankruptcy Code Section 727(a)(4)(D) in part, specifically with respect to the petition filed against him in an attorney grievance matter and Chapter 7 means test calculation, and the Motion to Dismiss is granted as to that claim; and

(viii) the Plaintiffs have alleged a plausible claim under Bankruptcy Code Section 727(a)(5), and the Motion to Dismiss is denied as that claim.

An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.

Dated: Brooklyn, New York
June 12, 2026

Elizabeth S. Stong
United States Bankruptcy Judge

75